538 So.2d 760 (1989)
Lydia C. CLARK
v.
MOORE MEMORIAL UNITED METHODIST CHURCH, a Religious Society, and the Board of Trustees of Moore Memorial United Methodist Church.
No. 58236.
Supreme Court of Mississippi.
January 25, 1989.
Tom P. Calhoun, Greenwood, for appellant.
William Liston, Liston & Lancaster, Winona, Jimmy B. Reynolds, Jr., Steen, Reynolds, Dalehite & Currie, Jackson, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
In this appeal we are asked to decide whether Lydia C. Clark (Clark), the pastor's wife and a member of the defendant church, Moore Memorial United Methodist (Moore Memorial), was an invitee on the day she slipped and fell after attending a church function. The trial court determined that Clark was, as a matter of law, a licensee and granted to Moore Memorial summary judgment on the issue of Clark's status. Thereafter, the Circuit Court of Montgomery County court granted full summary judgment in favor of Moore Memorial and entered final judgment against Clark. See, Rules 56(b) and 56(c), Mississippi Rules of Civil Procedure.
We reverse.
On July 10, 1983, at approximately 10:35 a.m., Clark slipped and fell on the wood floor in the hallway of the church's Fellowship House located near the church in Winona, Mississippi, as she was going from her Sunday School class to her home between Sunday School and church services. Clark suffered a broken hip and underwent hip replacement surgery. It is uncontradicted that Clark was voluntarily attending Moore Memorial for purposes of worship and spiritual guidance and "(b)ecause I enjoy the class, I enjoy the fellowship and I get some good out of it." It is also undisputed that Moore Memorial is an unincorporated non-profit religious association.
Further, it is undisputed that there was no liquid, debris or other foreign substance on the floor. Clark stated in her deposition that she had walked through the hall "many, many times;" that she had walked across the floor at 10 a.m. that morning; and that at all times the floor "looked clean and in good condition." She admitted that there was nothing on the floor that caused her to fall. Her position is that the floor was maintained (waxed and buffed) such that it was slippery. Clark conceded that she did have knowledge of the fact that a waxed and polished hardwood floor might be slippery.
George L. McMath was Moore Memorial's janitor at the time of the accident. He *761 was deposed and stated that he had been maintaining the floors in a particular fashion for several years preceding Clark's fall. Once a month he swept the floors and then used a cleaning (or stripping) solution to remove old wax and dirt. After that dried, he applied Johnson's Heavy Duty Liquid Traffic Wax. When this had dried, he used a buffer to bring out the shine.
In between these monthly re-waxings, McMath swept and mopped up spills, crumbs and dirt. He also used a little Mop and Glow mixed with water whenever he noticed scuff marks. He would apply the Mop and Glow/water mixture to the mark, let it dry and then buff it the same as he buffed the wax. There was no set pattern to McMath's use of the Mop & Glow. McMath was aware the Mop and Glow was not recommended for use on wood floors, but stated that this was only because it turned the floor white. McMath stated that his method of cleaning the floor did not make it any more slippery than a normal waxed floor.
Moore Memorial submitted the affidavit of Alvin Kirk Rosenhan. Rosenhan, an engineer, averred that for a period exceeding six months he conducted a test using an identical piece of wooden flooring and following McMath's cleaning procedures. Rosenhan concluded that "repeated usage of the cleaner, wax compounds and Mop-and-Glow on the materials did not produce an unreasonable slick or hazardous surface;" and Clark's shoes and her hurried pace were "the most likely cause of her fall." Clark submitted the affidavit of Deborah Jean Phillips Smith, the owner and operator of a maid service. Smith opined that the floor should have been stripped once every three months with a mechanical stripper to avoid wax buildup; that the failure to do so caused the floor to be slippery; that the use of Mop and Glow "substantially contributed to the wax buildup and subsequent slippery condition;" and that this slippery condition would not be "open and obvious" to persons such as Clark.
Plaintiff Clark also submitted the affidavit of Joan Emerson, long time church secretary. Emerson averred that prior to Clark's fall, she, Emerson, had fallen three times on the same floor. Further, she stated that two of her falls had not been the result of foreign substances on the floor. Emerson claims she told the janitor about the floor's condition. McMath's understanding was that whenever Emerson spoke to him about the floor her concern was debris that had been left by various church groups meeting in the Fellowship House. He claimed no one had ever complained about his general maintenance of the floor.
The last deposition of importance is that of Rev. Gladwyn Clark. Rev. Clark stated he was familiar with The Book of Discipline of the United Methodist Church (Book of Discipline). Under the laws and policies of the Book of Discipline the church has a duty to invite delinquent members to attend church functions; members must be loyal to the church through their presence at church functions, including Sunday School classes; and, the church "profits" by a member's presence. Rev. Clark also averred that Moore Memorial could not exist without the personal and economic support of its members through tithes, endowments, memorials, rents from properties, and profits from businesses. Rev. Clark concluded that the church's and its members' relationship was one of mutual benefit and Moore Memorial regularly invited members and others to attend and participate in church services.
Clark and her husband tithed by giving one-tenth of their income to the church on the first and fifteenth of each month. Clark also gave $1.25 each time she went to Sunday School class; twenty-five cents went into the church's general fund and the remaining dollar went toward various projects the class supported, such as a center for the handicapped in Senatobia.
On April 8, 1985, the circuit court entered its order granting Moore Memorial's motion for partial summary judgment on the issue of Clark's status at the time of her fall. Relying in part on McNulty v. Hurley, 97 So.2d 185 (Fla. 1957), the lower court determined that at that time Clark *762 was a licensee. On October 3, 1986, Moore Memorial moved for full summary judgment. On October 27, 1986, the circuit court granted summary judgment and entered its final judgment against Clark. It determined that the church owed to Clark, a licensee, the duty to refrain from wilfully or wantonly injuring her, unless her injury was caused by Moore Memorial's affirmative or active negligence. The lower court further determined that as a matter of law, the negligence charged did not involve active negligence because the negligence, if any, resulted from "the prior creation of a condition in the premises." The court concluded that the church had not wilfully or wantonly injured Clark and, therefore, there was no triable issue for the jury.

LAW
We recently repeated the standard of review of grants or denials of summary judgment, in Short v. Columbus Rubber & Gasket Co., Inc., 535 So.2d 61 (Miss. 1988, rehear'g den., December 28, 1988) (not yet reported):
This Court conducts de novo review of a lower court's grant of summary judgment. Pearl River County Bd. of Supervisors v. South East Collections Agency, Inc., 459 So.2d 783, 785 (Miss. 1984). "The general standard that an appellate court applies in reviewing the grant or denial of a summary judgment motion is the same as that employed by the trial court initially under Rule 56(c)." 10 Wright, Miller and Kane Federal Practice and Procedure § 2716 (1983 and Supp. 1988).
The law governing the grant or denial of a motion for summary judgment is familiar and well established. Fruchter v. Lynch Oil Co., 522 So.2d 195, 198 (Miss. 1988). In Dennis v. Searle, 457 So.2d 941 (Miss. 1984), we explained:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite.
457 So.2d at 944.
In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is, the non-movant should be given the benefit of every reasonable doubt. Smith v. Sanders, 485 So.2d 1051, 1054 (Miss. 1986).
Short v. Columbus Rubber and Gasket, 535 So.2d at 63.

I. DID THE LOWER COURT ERR IN GRANTING TO MOORE MEMORIAL PARTIAL SUMMARY JUDGMENT ON THE ISSUE OF CLARK'S STATUS?
Clark argues that, if not an invitee as a matter of law, then at least she has raised genuine issues of material fact concerning her status at the time of her fall. Clark contends that she qualifies as an invitee under either the "economic benefit" test or the "invitation test" as defined in the Restatement (2d) of Torts, § 332. Clark relies upon the fact that she and any member receive both express and implied invitations to attend church. She also relies on the fact, contained in Rev. Clark's affidavit, that the church cannot survive without the economic support of its members.
Moore Memorial analogizes a church member to a social guest, a guest in someone's home, and concludes that, as such, the church member is a bare licensee. This, the church argues, is appropriate because there is no economic benefit to the church as it is a non-commercial, non-profit entity.
The general and well-recognized rule in Mississippi is that an invitee is a person who goes upon the premises of another in *763 answer to the express or implied invitation of the owner or occupant for their mutual advantage. Lucas v. Buddy Jones Ford, Lincoln, Mercury Inc., 518 So.2d 646, 647 (Miss. 1988); Adams v. Fred's Dollar Store, 497 So.2d 1097, 1100 (Miss. 1986); Holley v. International Paper Co., 497 So.2d 819, 820 (Miss. 1986); Lucas v. Miss. Housing Authority, No. 8, 441 So.2d 101, 103 (Miss. 1983); Hoffman v. Planters Gin Co., Inc., 358 So.2d 1008, 1011 (Miss. 1978); Nowell v. Harris, 219 Miss. 363, 68 So.2d 464, 467 (1953). On the other hand, a licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner. Buddy Jones Ford, 518 So.2d at 647; Adams, 497 So.2d at 1100; Holley, 497 So.2d at 820; Miss. Housing Authority, 441 So.2d at 103; Hoffman, 358 So.2d at 1011.
The determination of which status a particular plaintiff holds can be a jury question, but where the facts are not in dispute the classification becomes a question of law. Buddy Jones Ford, 518 So.2d at 648; Adams, 497 So.2d at 1100.
In McNulty v. Hurley, 97 So.2d 185 (Fla. 1957), the Florida Supreme Court stated:
But an invitation to enter and worship, whether it be express or implied, does not constitute one who accepts the invitation an invitee in the legal sense. In order for such relationship to arise the person entering onto the premises, i.e, the invitee, must have done so for purposes which would have benefitted the owner or occupant of the premises, i.e., the invitor, or have been of mutual benefit to the invitee and the invitor. And as we view it, this benefit must be of a material or commercial, rather than a spiritual, religious, or social nature. This same reasoning is followed in our cases which hold persons invited into one's home as social guests to be licensees rather than invitees, even though they are expressly invited to enter the premises of the host. [citation omitted].
* * * * * *
It seems clear to us, therefore, that one who attends a religious edifice for the purpose of attending a religious service, as did the plaintiff in this case, does so "for his own convenience, pleasure or benefit" and is at best a licensee.
McNulty, 97 So.2d at 188-89.
However, McNulty in effect has been overruled. In Heath v. First Baptist Church, 341 So.2d 265 (Fla.App. 1977), cert. den. 348 So.2d 946 (Fla. 1977), the Florida appellate court stated, "[a]t the outset, we would note that while McNulty, supra, has not been expressly overruled, the ratio decidendi of that case has been altered ..." by subsequent changes in Florida law. Heath, 341 So.2d at 266. The Heath court went on to hold that summary judgment in the church's favor was inappropriate in part because Florida had, since McNulty, adopted the "invitation" test set out in Restatement (2d) of Torts, § 332. Heath, 341 So.2d at 266.
Restatement (2d) of Torts, § 332 (1965) defines "invitee" as:
(1) An invitee is either a public invitee or a business visitor.
(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.
(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.
In Alexander v. Jackson County Historical Society, 227 So.2d 291 (Miss. 1969), this Court held that a woman injured while visiting the Old Spanish Fort, an historical spot, belonged to that class of invitees known as "public invitees" because she was invited to enter and remain on the land as a member of the public for the purpose for which the land was held open to the public. Alexander, 227 So.2d at 292. This holding tracks the language of § 332(2) of the Restatement.
Alexander was raised in Holley, supra, and rejected as support for the appellant's argument that he was a public invitee. In Holley, a sixteen-year-old boy was rendered quadriplegic after diving into the *764 Wolf River from land owned by the appellee paper company. We held that the boy was a mere licensee. Noting that there are "countless thousands of cattle and fishing ponds, swimming holes, sink holes, creeks, lakes, ... swamps, bayous, and other bodies of water ... which dot and cover the farms, forests and open lands of this state," we concluded it would be inappropriate to hold such landowners liable for injuries sustained by those who simply entered and made use of the land. Holley, 497 So.2d at 820.
The distinction between Alexander and Holley lies in the difference between an invitation and mere permission. As is stated in the Comment to § 332 of the Restatement:
... A social guest may be cordially invited and strongly urged to come, but he is not an invitee....
Although invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter, if they desire to do so... .
Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee, ...; but it does not make him an invitee, ... .
The appellant in Holley had permission but he did not have an invitation.
Members of religious associations, in general, and Clark in particular, fall within the category of "public invitees," defined in Alexander, supra, and § 332(2) of the Restatement, supra. Religious bodies do expressly and impliedly invite members to come and attend their services and functions. They hold their doors open to the public. While they do not charge admission fees as does the Old Spanish Fort, churches do depend on contributions much the same as historical sites do, in order that they may continue to be open to the public. Therefore, a church member who does not exceed the scope of a church's invitation, is an invitee while attending a church for church services or related functions.
In the case at bar, the relevant facts are not in dispute. We, therefore, hold as a matter of law that Clark was at the time of her slip and fall an invitee.
We also note, but do not decide this appeal on the basis of, cases from another jurisdiction in which a church member attending a church function was treated as a "business visitor." Claridge v. Watson Terrace Christian Church, 457 S.W.2d 785 (Mo. 1970), followed in Schultz v. Webster Groves Presbyterian Church, 726 S.W.2d 491 (Mo. App. 1987).
Finally, the trial court erred in entering final judgment on Moore Memorial's motion for full summary judgment. We express no opinion on the merits of this cause of action. However, the duty owed by an invitor to an invitee is to exercise reasonable care to keep the premises in a reasonably safe condition and, if the invitor knows of, or by the exercise of reasonable care should have known of, a dangerous condition, which is not readily apparent to the invitee, the invitor is under a duty to warn the invitee of such condition. Buddy Jones Ford, 518 So.2d at 648; Kroger, Inc. v. Ware, 512 So.2d 1281, 1282 (Miss. 1987); Alexander, 227 So.2d at 292. As such, viewing the evidence in the light most favorable to the non-movant, Clark, there remain genuine issues of material fact precluding summary judgment.
In light of our disposition of this case, we need not address Clark's remaining assignments of error.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, PITTMAN and ZUCCARO, JJ., concur.