# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1999-CA-01413-SCT

*MAYVALAN HUDSON*

*v.*

*COURTESY MOTORS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/28/1999 |
| TRIAL JUDGE: | HON. RICHARD W. McKENZIE |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE W. BYRNE, JR. |
| ATTORNEYS FOR APPELLEE: | DOUGLAS BAGWELL |
| | ROBERT E. BRIGGS |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED - 09/13/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/4/2001 |

**BEFORE PITTMAN, C.J., WALLER AND COBB, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. Mayvalan Hudson filed this personal injury lawsuit against Courtesy Motors, Inc. (CMI) seeking damages for injuries suffered when she slipped and fell while on the CMI premises. The Forrest County Circuit Court granted summary judgment to CMI, finding that Hudson's legal status was that of a licensee rather than an invitee, and thus CMI's duty to Hudson was to refrain from willfully or wantonly injuring her. The circuit court also found that Hudson had failed to show any willful or wanton conduct on the part of CMI and that the active conduct exception was not applicable in cases such as this one where the licensee was injured due to the condition of the premises, or passive negligence. Aggrieved, Hudson appeals raising three issues, which we combine as follows:

> **WHETHER THE TRIAL COURT ERRED IN FINDING HUDSON TO BE A LICENSEE AND IN GRANTING SUMMARY JUDGMENT TO CMI ON THAT BASIS, WHEN THERE WERE UNRESOLVED ISSUES OF FACT REGARDING LEGAL STATUS AND DUTY OWED.**

We agree with the circuit court and affirm.

## FACTS

¶2. Mayvalan Hudson was injured when she slipped and fell while on the premises of Courtesy Motors, Inc., a Hattiesburg used car dealership. Hudson now alleges that CMI caused her injuries by negligently remaining open for business even though its used car lot building was in a state of disrepair due to very recent storm damage. Although the facts surrounding the accident itself are simple, resolution of this case requires inquiry into the business relationship which led Hudson to be on CMI's premises in the first place.

¶3. On June 8, 1998, Hudson went to CMI to find a man named Billy Johnston, who purchased used cars and trade-ins from CMI, as well as from other dealers, for resale to individuals and other used car dealers. Johnston had once been employed by CMI, but he had been self-employed in the wholesale used car business for many years. Apparently CMI had sold one of its used cars to Johnston, but retained possession of the certificate of title (which identified Johnston's business as the car's owner), pending Johnston's payment of the purchase price. Johnston subsequently sold the car to Hudson's used car dealership, and Hudson, in turn, found a buyer for the car. In order to finalize this multi-step sales transaction, it was necessary for Hudson to obtain the certificate of title for the car from Johnston, and deliver payment to him. It is undisputed that, in her effort to locate Johnston for that purpose, Hudson was at CMI's place of business, on Pine Street, where many of the automobile dealerships in Hattiesburg are located.

¶4. CMI's used car lot building at 1500 Pine Street, on the day in question, had all its doors standing open, in order to hasten the drying-out process necessitated by the storm damage. It is undisputed that Hudson knew that the carpet was still wet as she walked on it. After entering the building and walking on the wet carpet, Hudson left the building through the front door, and while walking down a concrete ramp in front of the building, she lost her balance, slipped and fell on her buttocks and lower back.

¶5. Hudson's complaint stated that she was on the premises of CMI "as a business invitee, in order to transact the purchase of a used motor vehicle." She alleged that her injuries occurred upon premises under the control of CMI and that CMI's negligence was the proximate cause of her injuries. Additionally, she alleged that CMI negligently failed to warn of the dangerous conditions of its premises; failed to block access to the ramp; and was negligent in allowing her to walk in an area that was unreasonably dangerous. Hudson sought damages for medical expenses and past and future suffering in the amount of $750,000.

¶6. CMI answered, setting forth numerous defenses. The primary one recognized by the trial court was that Hudson was present as a licensee, rather than an invitee, and that CMI's only duty to her was to refrain from willfully and wantonly injuring her. CMI denied that Johnston was an employee or agent of CMI and stated that there was no mutual benefit to CMI from the meeting between Hudson and Johnston, which was the purpose for which Hudson had come to CMI's place of business.

## STANDARD OF REVIEW

¶7. "This Court applies a de novo standard of review to a grant of summary judgment by the lower court. The evidence must be viewed in the light most favorable to the party against whom the motion has been made."**Russell v. Orr**, 700 So.2d 619, 622 (Miss. 1997). "The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense....the existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact." **Simmons v. Thompson Mach. of Miss., Inc**., 631 So.2d 798, 801 (Miss. 1994) (citing **Shaw v. Burchfield**, 481 So.2d 247, 252 (Miss. 1985)).

## ANALYSIS

### WHETHER THE TRIAL COURT ERRED IN FINDING HUDSON TO BE A LICENSEE AND IN GRANTING SUMMARY JUDGMENT TO CMI ON THAT BASIS, WHEN THERE WERE UNRESOLVED ISSUES OF FACT REGARDING LEGAL STATUS AND

**DUTY OWED.**

¶8. As a threshold matter, this Court considers whether to continue its application of the invitee-licensee-trespasser trichotomy in analyzing the duty of care owed by property owners to personal injury plaintiffs. Historically, the duty owed to an entrant on property was determined by reference to the person's status under the common law system. *Little by Little v. Bell*, 719 So.2d 757, 760 (Miss. 1998). That system established distinctions between trespassers, licensees, and invitees when determining the landowner's duty. *Id.* at 760. This Court has recently reaffirmed these distinctions in *Hall v. Cagle*, 773 So.2d 928, 929 (Miss. 2000).

¶9. An invitee is defined as a person who goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual advantage. *Lucas v. Buddy Jones Ford Lincoln Mercury Inc.,* 518 So. 2d 646, 647 (Miss. 1988)*; Hoffman v. Planters Gin Co.,* 358 So.2d 1008, 1011 (Miss. 1978). A landowner owes a business invitee a duty of reasonable care for the invitee's safety. *Cagle,* 773 So.2d at 929.

¶10. A licensee, on the other hand, is defined as a person who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner. *Id*. A landowner owes a licensee only the duty to refrain from willfully or wantonly injuring him. *Hoffman*, 358 So.2d at 1012. *Hoffman*, however, created an exception to traditional licensee liability, stating:

> We think the premises owner is liable for injury proximately caused by his affirmative or active negligence in the operation or control of a business which subjects either licensee or invitee to unusual danger, or increases the hazard to him, when his presence is known and that the standard of ordinary and reasonable care has application.

*Id.* at 1013. *See also Lucas,* 518 So.2d at 648.

¶11. Further refining this analysis, this Court has recognized two classes of invitees: public invitee or business invitee. *Clark v. Moore Mem'l United Methodist Church*, 538 So.2d 760, 763 (Miss. 1989) (citing Restatement (Second) of Torts, § 332 (1965)). A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public, while a business visitor is invited to enter or remain on the land for a purpose directly or indirectly connected with business dealings with the possessor of the land. *Id*. The determination of which status any particular plaintiff holds can be a jury question, but where the facts are not in dispute, the classification becomes a question of law for the trial judge. *Adams ex rel. Adams v. Fred's Dollar Store of Batesville*, 497 So.2d 1097, 1100 (Miss.1986).

¶12. In recent years, the invitee-licensee-trespasser trichotomy has come under attack by those who claim that it engenders confusion and unfairness in the area of premises liability. While many of the concerns raised by these critics may be valid, we nevertheless hold that these distinctions are well-grounded in Mississippi jurisprudence and public policy, and we decline to abandon them at this time.

### A. Was Hudson an invitee or licensee?

¶13. Hudson argues that she was an invitee or, in the alternative, if she was a licensee, then she was one to whom CMI owed a higher duty of care. Hudson asserts in her brief that she had gone to CMI for the mutual benefit of all parties. Specifically, she asserts that CMI ultimately benefitted through her relationship

with Johnston because CMI would not receive payment for the used car in question until Hudson sold it, and that in order to do so she must first obtain the title to the car from Johnston. Hudson's testimony was before the trial court by way of relevant portions of her deposition and answers to interrogatories attached as exhibits to CMI's summary judgment motion. She clearly stated that she did not purchase the car from CMI, but rather purchased it from Billy Johnston, "[t]he person I went to see... an independent person who buys all their [CMI's] used car trade-ins."

¶14. The deposition and interrogatories of CMI's business manager, Larry Craft, stated that Johnston was a wholesaler, that he was at CMI at the time Hudson fell, and that there was no contract nor on-going relationship between CMI and Johnston.

¶15. Billy Johnston's deposition reveals that Hudson "came by there [CMI] to pick up the title on a car she had bought from me." Johnston said that Hudson "might have assumed that she could find me there or on Pine Street somewhere" and responding further said "[t]hat's where all the car dealerships are, yes sir." He stated that in his wholesale used car business he bought "car trade-ins or new car trade-ins at dealerships" and that he had been in that business since 1987.

¶16. The circuit court found that Hudson came to CMI place of business for her own convenience and benefit and that CMI did not derive any benefit from her visit to its business presence. The court held that she was not an invitee when she went to CMI to meet Billy Johnston on the day she fell. Based on our review of the record before us, we agree.

## B. Even if Hudson was a licensee, was she nevertheless owed a higher duty of care?

¶17. Hudson argues that even if she is a licensee, the duty owed to her by CMI is more than to just refrain from wilfully or wantonly injuring her, because she fits within the *Hoffman* exception. In *Hoffman*, this Court found that the exercise of ordinary reasonable care is required when the landowner is engaged in active conduct and the entrant's presence is known to the landowner. *Hoffman*, 358 So.2d at 1013. Hudson contends that CMI had a duty to warn her of any hidden danger or peril known to CMI. Further, she contends that since she was unable to appreciate the condition of the building before entering and CMI had neither posted warning signs nor placed any barricades or other devices to block access to the building, CMI breached the relevant standard of care.

¶18. In her response to interrogatories, however, Hudson stated that when she entered CMI's used car lot building, "all the doors were standing wide open," and she "realized that the roof had collapsed, dumping water and debris on the carpet." She talked with an unidentified man that she "guessed was a salesman" about it while she waited for Johnston, and she "walked around inside the building" because "there were no chairs to sit on." She further stated the CMI "had a card table, two chairs and a telephone outside the front door... for their salesmen to use since they could not conduct business inside their building."

¶19. CMI's response to interrogatories, attached as an exhibit to its answer to Hudson's complaint, also reveals that CMI's business was not being conducted in the damaged building on the day of Hudson's fall and that no employees of CMI were on the premises at the used car lot building at the time of her fall. CMI contends that Hudson's presence was not known to it and that her injuries were not caused by affirmative conduct but simply by the condition of the premises.

¶20. For the *Hoffman* exception to apply, the landowner must (1) be aware of the plaintiff's presence and

(2) engage in active negligence rather than passive negligence. *Hoffman*, 358 So.2d at 1011. Thus, the question to be answered is whether CMI was actively negligent in having its building open in spite of its water damage, or whether doing so was, at worst, passive negligence.

¶21. In *Hoffman*, we first applied this exception against a cotton gin which allowed non-employees to come into the vicinity of an augur used to funnel cotton seed onto a loading truck. *Id.* at 1010-11. The gin had also failed to post warning signs around the augur, even though the floor nearby was slippery, and the son of a gin employee slipped and fell into the augur, losing a foot in the process. *Id.* at 1010. Obviously, CMI was not "active" in the same sense as was the cotton gin in *Hoffman*. All the doors of the CMI building were standing open, there was wet carpet and debris, and there was a card table sitting outside with chairs and a telephone. No employees were on duty at the building. Hudson was clearly familiar with the property, having been there on numerous occasions, as her son "was always there" during working hours of CMI, "buying used cars from them and telling them what they're worth." Even though there were no warning signs, she noticed the water and debris immediately upon entering the building, yet continued to walk around in it.

## CONCLUSION

¶22. Hudson's statement of material facts listed 5 specific facts, none of which is in genuine dispute as reflected in the record before this Court. The trial court was correct in so finding, and in holding, as a matter of law, that Hudson was a licensee and that she presented no evidence of active or affirmative negligent conduct, nor any evidence of wilful or wanton conduct, on the part of CMI. The judgment of the Forrest County Circuit Court is affirmed.

¶23. **AFFIRMED.**

   **PITTMAN, C.J., BANKS, P.J., SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DIAZ AND EASLEY, JJ.**

   **McRAE, PRESIDING JUSTICE, DISSENTING**:

¶24. I write to once again voice my opinion that the time has come for Mississippi to abandon the archaic artifice which requires us to distinguish between the duty of care owed to invitees and licensees. This vestige from the feudal days of the British common law has proven increasingly difficult and tedious to apply to modern litigants and increasingly difficult to justify in the context of modern jurisprudence. Landholders should owe all non-trespassers on their property a duty of reasonable care, regardless of whether they could be classified as invitees or licensees. In any event, the trial court erred in granting summary judgment for CMI because whether Mayvalan Hudson is an invitee or licensee in this case is a question of fact to be resolved by the jury. Accordingly, I dissent.

¶25. The modern trend away from the common law invitee/licensee/trespasser theory of premises liability was sparked by the United States Supreme Court in the maritime case of *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 79 S. Ct. 406, 3 L. Ed.2d 550 (1959). In that case the Court abrogated the distinctions and imposed on landowners a "duty of exercising reasonable care under the circumstances of each case." *Id.* at 631- 32.

¶26. Since *Kermarec* was decided, approximately half of the states have abandoned the distinction

between invitees and licensees and now require landholders to exercise reasonable care under the circumstances. *Hall v. Cagle*, 773 So.2d 928, 930 (Miss. 2000) (McRae, J., concurring). This standard requires landholders to make the premises reasonably safe or, if not able to do so, to warn of the danger. *Id.*

¶27. Juries are routinely called on to determine reasonableness, and should not have difficulty doing so in premises liability cases. In fact, applying a standard of reasonable care would be more uniform, certain, and rather than continuing to attempt to apply the feudal common law system to modern society. As the United States Supreme Court observed in 1959:

> [E]ven within a single jurisdiction, the classifications and subclassifications bred by the common law have produced confusion and conflict. As new distinctions have been spawned, older ones have become obscured. Through this semantic morass the common law has moved, unevenly and with hesitation, towards imposing on owners and occupiers a single duty of reasonable care in all the circumstances.

*Kermarec,* 385 U.S. at 630-31.

¶28. In *Hoffman v. Planters Gin Co.,* 358 So.2d 1008, 1011 (Miss. 1978), for example, we held that licensees and invitees are owed a duty of reasonable care when they are proximately injured by "active" negligence in the operation or control of a business which increases the hazard to the licensee or invitee. Later, in *Clark v. Moore Mem'l United Methodist Church*, 538 So.2d 760, 763 (Miss. 1989), we expanded the definition of invitee to include church members, affording her the highest duty of care under the law:

> Religious bodies do expressly and impliedly invite members to come and attend their services and functions. They hold their doors open to the public. While they do not charge admission fees as does the Old Spanish Fort, churches do depend on contributions much the same as historical sites do, in order that they may continue to be open to the public. Therefore, a church member who does not exceed the scope of a church's invitation, is an invitee while attending a church for church services or related functions.

*Id.* at 764. These cases represent the evolution of the law, albeit incomplete, toward a standard of reasonable care.

¶29. We require people to conduct themselves as a reasonably prudent person in almost all other areas of tort liability, and premises liability should be no different. "[A] man's life or limb should not differ based on whether he is on the property for business or for a social visit." *Hall v. Cagle*, 773 So.2d at 93 (McRae, J., concurring). What is even more confusing is when a landowner is driving his car on his property and negligently wrecks his vehicle and injures his passenger, we do not apply the invitee or licensee test. It is the reasonable person standard.

¶30. Recognizing the arbitrary unfairness of the common law system of fault allocation, Mississippi was one of the first states to abolish contributory negligence as a complete bar to recovery and replaced it with a pure comparative negligence standard. *Tharp v. Bunge Corp.*, 641 So.2d 20, 23 (Miss. 1994). We should now apply our comparative negligence rule to premises liability cases, and replace the invitee/licensee distinctions with a reasonable person standard. This would be the most fair way to allocate

fault between entrant plaintiffs and defendant landowners.

¶31. Interestingly, if Mayvalan Hudson were on CMI's property to test-drive a car and a CMI employee negligently caused an accident while Hudson was in the car, the invitee/licensee distinction would not apply. *Tharp* sets forth the proper legal setting in which to analyze negligence cases, including premises liability, and that is the standard of a care that a reasonable person would employ under the circumstances.

¶32. In addition, whether Hudson was an invitee or a licensee is a jury question. As the majority correctly notes, whether a plaintiff is an invitee or licensee is a jury question. *Saucier v. Biloxi Reg'l Med. Ctr.*, 708 So.2d 1351, 1355 (Miss. 1998). When no facts are disputed, however, the question becomes one of law. *Id.* In *Clark*, we defined a business invitee as one who "is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." 538 So.2d at 763. Summary judgment was improper in this case because there exists a genuine issue of material fact regarding whether Hudson was on CMI's property for a purpose directly or indirectly connected with CMI's used car business.

¶33. We are now presented with another opportunity to abandon the antiquated invitee/licensee distinctions in favor of adopting the standard of a reasonable person acting under like circumstances, and we should not fail to take it. A reasonable person standard would be easier to apply and less arbitrary in its results. It represents the evolution of our law, and if we fail to embrace it, we will remain mired in the past in the area of premises liability. Furthermore, whether Hudson was an invitee or a licensee is a question for the jury to resolve. The trial court therefore erred in granting summary judgment in favor of CMI. Accordingly, I dissent.

**DIAZ AND EASLEY, JJ., JOIN THIS OPINION.**