# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00456-SCT

*DON E. GORDON*

*v.*

*NATIONAL STATES INSURANCE COMPANY AND*
*BERNARD VANLANDINGHAM*

| | |
|---|---|
| DATE OF JUDGMENT: | 4/11/2002 |
| TRIAL JUDGE: | HON. C. E. MORGAN, III |
| COURT FROM WHICH APPEALED: | WINSTON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID MICHAEL BRISOLARA |
| ATTORNEYS FOR APPELLEES: | G. TODD BURWELL |
| | J. NILES McNEEL |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED-06/05/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE McRAE, P.J., WALLER AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     Don E. Gordon[1] appeals from summary judgments dismissing his mother Pauline H. Sullivan's bad faith action against National States Insurance Company (National) and Bernard VanLandingham. National filed a motion for summary judgment which the Circuit Court of Winston County, Mississippi, granted. Later the court granted summary judgment to VanLandingham. Sullivan immediately filed a motion for

---

[1]Pauline H. Sullivan, the plaintiff below and the original appellant, died during the pendency of this appeal. By order dated June 4, 2003, her son, Don E. Gordon, was substituted in her place. For the sake of simplicity, we will refer to Sullivan in this opinion.

reconsideration and suggestion of error. The trial court denied the motion. Sullivan appeals and raises the following issues:

I.    WHETHER NATIONAL STATES INSURANCE COMPANY ACTED IN BAD FAITH WHEN DENYING SULLIVAN'S INSURANCE POLICY BENEFITS.

II.   WHETHER THE DENIAL OF BENEFITS REACHED THE HEIGHTENED STATUS OF AN INDEPENDENT TORT.

## FACTS

¶2.    On February 15, 1997, Arvel Sullivan and his wife Pauline Sullivan purchased two National life insurance policies valued at $6,000 each from VanLandingham, an agent of National. The application for the policy at issue was filled out by VanLandingham. Question 9 on the application contained a series of health questions under the caption "If any part of question 9 is answered "yes" no coverage can be issued." Subsection b of question 9 asked if the applicant had within the past two years "received treatment (including prescription drugs) from a medical professional for: . . . heart attack, congestive heart failure, . . ." The recorded answer was "no." The completed application was signed by Arvel. Arvel read and/or had the opportunity to read his application prior to signing it. The application was submitted to National, and a whole life insurance policy was issued, naming Pauline as beneficiary.

¶3.    In August 1998, National received notice that Arvel died. National sent Pauline a Proof of Death claim form to be completed and returned to National.

¶4.    National received the Proof of Death claim form, death certificate for Arvel, and an Assignment of Policy Benefits from Pauline to Westbrook Funeral Home on September 4, 1998. On the same day, National sent a letter to Pauline notifying her that it would begin the claim process. National immediately dispatched medical record requests to Arvel's medical providers.

2

¶5. After receiving the medical records, National discovered that Arvel had been treated for congestive heart failure within the two-year period prior to his application for insurance with National. On October 21, 1998, National notified Pauline of its findings and advised her that it was denying her claim, rescinding the policy, and refunding all premiums paid on the policy due to the non-disclosure of accurate medical history.

¶6. On October 23, 1998, Pauline contacted National and asserted that Arvel had disclosed his heart condition to VanLandingham who stated that Arvel's condition did not need to be reported unless Arvel suffered a heart attack. National advised Pauline to submit her assertion in writing so that it could investigate the situation. National never received the written statement from Pauline. On November 24, 1998, National received a complaint from the Insurance Commissioner's office filed by Pauline requesting that National obtain a statement from its agent, VanLandingham, regarding conversations with Arvel about his heart condition.

¶7. National procured a statement from VanLandingham on December 7, 1998. VanLandingham stated that the health questions on the application were asked directly to Arvel and were properly recorded. National forwarded VanLandingham's statement to the Insurance Commissioner's office.

¶8. On December 8, 1998, National received a demand letter threatening litigation from David M. Brisolara, Pauline's attorney. After considering the potential expense of litigation, National reconsidered its position and decided to pay Pauline's claim. A check for the policy benefit amount was issued to Westbrook Funeral Home per Pauline's assignment of the benefits request.

¶9. National subsequently received another letter on Pauline's behalf requesting an additional payment of $10,000 for consequential damages. National refused, and the instant case ensued.

## DISCUSSION

3

¶10. Pauline contends that the circuit court erred in granting National and VanLandingham's motions for summary judgment. Pauline argues that National's agent had been notified of Arvel's heart condition and elected to misrepresent it on the insurance policy application. Pauline asserts that the agency relationship between VanLandingham and National warrants a conclusion that National had knowledge of the facts given to its agent and was liable for payment on the policy immediately. By initially denying payment on the insurance policy, Pauline argues, National is liable for an independent tort.

¶11. Since issues one and two are interrelated, they will be discussed simultaneously. This Court applies a de novo standard of review to a trial court's grant or denial of summary judgment. *Lewallen v. Slawson*, 822 So.2d 236, 237 (Miss. 2002). This is the same standard applied by the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure, which states that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact . . . ." *Hudson v. Courtesy Motors, Inc.*, 794 So.2d 999, 1002 (Miss. 2001). The burden of demonstrating that no genuine issue of fact exists is on the moving party. *Id.*

¶12. Here, Pauline sued National for consequential and punitive damages based solely on the theory of bad faith. National's initial denial of payment was justifiably based. The record reflects that Arvel's medical records showed that he had been treated for congestive heart failure within two years of his application to National. Pauline later asserted that VanLandingham had misrepresented material facts regarding Arvel's health history. National requested that Pauline present those allegations in writing which she did not do. National returned all the premiums paid on the policy. Shortly thereafter, the Insurance Commissioner's office notified National of Pauline's complaint and requested that National acquire a written statement from its agent, which it promptly did. The agent denied Pauline's allegation in writing.

4

National received a letter from Pauline demanding payment of the claim. Within eight days, National informed Pauline that it would pay the claim, which it did. Pauline requested an additional $10,000 as consequential damages which National refused.

¶13.　In *Blue Cross & Blue Shield of Miss., Inc. v. Campbell*, 466 So.2d 833, 841 (Miss. 1984), Blue Cross issued a policy of insurance to Campbell to cover medical expenses with a clause that excluded pre-existing conditions. After the policy was issued, Campbell was hospitalized and assigned the benefits under his policy to the hospital.. The hospital filed a claim, and Blue Cross requested the medical records. After a review of the records, Blue Cross denied the claim on the basis that the hospitalization was the result of a pre-existing condition. Campbell later submitted a letter from his attending physician stating that the condition was not pre-existing. Upon receipt of the correspondence, Blue Cross paid the claim. Campbell later filed suit seeking compensatory damages and punitive damages. He was awarded $10,000. Blue Cross appealed, and this Court reversed. We stated:

> In this case Blue Cross was acting well within its rights under the exclusionary provisions of Campbell's policy in denying the claims submitted by Delta Medical, and there was simply no "bad faith" issue to be presented to the jury. We therefore conclude that when Blue Cross paid Campbell under the policy provisions he had no further cause of action against the company.
>
> . . . It is not the function of this Court to penalize honest and realistic evaluations of claims.

*Id.* at 841.

¶14.　It is undisputed that Pauline's claim was paid in full. Punitive damages under Mississippi law are not to be awarded to a party for compensation of an injury but are to be awarded as punishment for the defendant's wrongdoings so that others may be deterred from similar offenses. *Ciba-Geigy Corp. v. Murphree,* 653 So.2d 857, 874 (Miss. 1994). This Court has recognized that where there is a legitimate

or arguable reason for denial of payment under an insurance policy, there is no valid claim for punitive damages. *Mut. Life Ins. Co. v. Estate of Wesson*, 517 So.2d 521, 527 (Miss. 1987). Punitive damages are only

appropriate in the context of a denial of an insurance claim if the insurer acted with malice, gross negligence or reckless disregard for the insured's rights. ***Sessoms v. Allstate Ins. Co.***, 634 So.2d 516, 519 (Miss. 1994). No evidence has been presented to suggest that National acted with malice, gross negligence or reckless disregard in handling Pauline's claim. For these reasons, we find no reversible error.

## CONCLUSION

¶15. National had an arguable and legitimate reason to deny Pauline Sullivan's claim. National subsequently paid the claim in full, and no evidence was presented to show that National acted in "bad faith." Therefore, there is no genuine issue of material fact regarding the timely payment of this claim. This Court affirms the trial court's orders granting summary judgment.

¶16. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, DIAZ AND CARLSON, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY. EASLEY, J., NOT PARTICIPATING.**