# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01867-COA

**TIFFANY GRIFFIN**                                                                 **APPELLANT**

**v.**

**GRENADA YOUTH LEAGUE**                                                   **APPELLEE**

DATE OF JUDGMENT:                    11/27/2015
TRIAL JUDGE:                           HON. C.E. MORGAN III
COURT FROM WHICH APPEALED:   GRENADA COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:       STEVEN CRAIG PANTER
                                     STACY EVERETT PEPPER
ATTORNEYS FOR APPELLEE:        NAKIMULI ONI DAVIS-PRIMER
                                     J. STEPHEN KENNEDY
NATURE OF THE CASE:               CIVIL - PERSONAL INJURY
TRIAL COURT DISPOSITION:        SUMMARY JUDGMENT GRANTED FOR
                                     APPELLEE
DISPOSITION:                           AFFIRMED - 03/28/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., FAIR AND WILSON, JJ.**

**WILSON, J., FOR THE COURT:**

¶1.      On April 28, 2012, Tiffany Griffin attended a charity baseball tournament held at fields owned and maintained by the Grenada Youth League (GYL), a nonprofit corporation. Griffin's sons were on teams playing in the tournament. As she walked down a grassy hill from the parking lot to the ballfields, Griffin fell and suffered a broken ankle. Griffin sued GYL on a premises liability theory in the Grenada County Circuit Court. She alleges that she fell because she stepped into a one-inch-deep "hole" that was obscured by grass that was three or four inches high. The record does not include any photographs of the supposed

"hole," and GYL denies that there was a "hole" anywhere in the vicinity. The circuit court subsequently granted summary judgment for GYL. The court acknowledged that there is a "dispute over whether there actually was a hole," but the court ruled "that as a matter of law the premises was reasonably safe and there was no dangerous condition or peril that required a warning." We agree and therefore affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. GYL owns and operates a twenty-three-acre park in Grenada with about ten youth baseball and softball fields. GYL oversees youth leagues and occasionally hosts youth tournaments at the park. GYL has only one paid employee and is otherwise run by volunteers, including a volunteer board and president.

¶3. GYL's president for the 2012 season, Jeff McWhorter, asked three or four board members to serve on the grounds committee. Before the season, the committee inspected the park and did not identify any issues or needed repairs.

¶4. Most of GYL's board members are coaches, parents, or grandparents of children who play baseball or softball at the park. Thus, most board members regularly attend games and walk and inspect the premises while at the park. In addition, every board member has a key to an equipment shed at the park, so any of them could easily fill a hole if one were found. GYL hired a company called Yard Pro to cut the grass in the park during the 2012 season. Yard Pro cut the grass on a weekly basis.

¶5. From Monday, April 23, to Saturday, April 28, 2012, GYL hosted its annual Frankie Bailey Tournament at the park. The tournament, named in honor of a former player who died

from childhood cancer, serves as a fundraiser for both St. Jude Children's Research Hospital and GYL. There is no admission fee for the tournament, but attendees are encouraged to make charitable donations. Yard Pro cut the grass the weekend before the tournament began and again on Wednesday, April 25, 2012.

¶6. Griffin's two sons played in GYL leagues and were playing in the tournament. Griffin attended about six games during the tournament, including on Friday, April 27, and she had been to the park many times in prior seasons. On April 28, Griffin arrived at the park around 11 a.m. She made a $5 donation when she entered and parked her car in a gravel parking lot up a gently sloping grassy hill from the ballfields. The lot is framed by wooden light poles laid sideways on the ground to form a twelve- to eighteen-inch-high boundary around the lot.

¶7. A paved walkway runs from the parking lot to the ballfields, but Griffin decided to take a shortcut by stepping over one of the wooden poles and walking down the grassy hill to the fields. There were no signs warning visitors not to walk down the hill, and McWhorter acknowledged that people frequently walk down the hill. Griffin was wearing flip-flops and carrying both a folding chair and a bag holding a bat and batting helmet.

¶8. Griffin testified in her deposition that she fell after stepping into a "hole" that was "maybe an inch [deep], two inches max," and "maybe four inches wide." Griffin testified that she did not see the "hole" because the grass was "overgrown," by which she meant "[t]hree to four inches" high. Griffin testified that when she stepped into the hole, she rolled her ankle and fell to the ground.

¶9. McWhorter was working at the concession stand when he was told that someone had

3

fallen on the hill. When McWhorter reached the hill, he was told that Griffin had broken her ankle, so he called for an ambulance.

¶10. After Griffin left in an ambulance, McWhorter and another board member surveyed the area in which she fell. McWhorter testified that the grass was not overgrown and that they did not find any "hole." McWhorter testified that if there had been a hole in the area, he would have noticed it because he walked through the area whenever he went to the equipment shed. In addition, there had been no other reports of falls or holes in the area.

¶11. On September 9, 2014, Griffin filed a complaint against GYL alleging, inter alia, negligence on a premises liability theory. Griffin alleged she "was a business invitee when she entered onto the property owned by [GYL]." She alleged that she "was severely injured when she stepped into a drainage ditch." At her deposition, Griffin stated that she actually stepped in a "hole," not a "drainage ditch."

¶12. On October 12, 2015, GYL filed a motion for summary judgment. In its motion, GYL argued that Griffin was a licensee, not an invitee. In addition, GYL argued that even if Griffin was an invitee, the premises was reasonably safe and that it did not breach any duty to warn her of hidden dangers. In response, Griffin argued that she was a "public invitee" and that disputes of fact on the issues of duty and breach precluded summary judgment.

¶13. On November 30, 2015, the circuit court granted summary judgment for GYL.[1] The court concluded that Griffin was a public invitee and that there was a dispute of fact as to the

---

[1] On November 16, 2015, the court granted summary judgment for GYL on all non-premises-liability claims in the complaint and on Griffin's claim for punitive damages, all of which Griffin had conceded at the hearing on GYL's motion for summary judgment.

existence of a "hole"; however, the court ruled "that as a matter of law the premises was reasonably safe and there was no dangerous condition or peril that required a warning." Griffin filed a timely notice of appeal.

**DISCUSSION**

¶14. We review an order granting summary judgment de novo. *Pigg v. Express Hotel Partners LLC*, 991 So. 2d 1197, 1199 (¶4) (Miss. 2008). The movant is entitled to summary judgment if there is no genuine issue of material fact. *Glover ex rel. Glover v. Jackson State Univ.*, 968 So. 2d 1267, 1275 (¶22) (Miss. 2007). But the mere existence of disputed facts does not preclude summary judgment: "The focal point of our standard for summary judgment is on *material* facts[,]" by which we mean those facts "*that matter . . . in an outcome determinative sense*." *Simmons v. Thompson Mach. of Miss. Inc.*, 631 So. 2d 798, 801 (Miss. 1994). "The existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact." *Sanders v. Advanced Neuromodulation Sys. Inc.*, 44 So. 3d 960, 965 (¶11) (Miss. 2010) (quoting *Moss v. Batesville Casket Co.*, 935 So. 2d 393, 399 (¶17) (Miss. 2006)).

¶15. On a motion for summary judgment, "[t]he evidence is viewed in the light most favorable to the party opposing the motion." *Davis v. Hoss*, 869 So. 2d 397, 401 (¶10) (Miss. 2004). However, "[t]he non-moving party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there are genuine issues for trial." *Pigg*, 991 So. 2d at 1199 (¶4) (quoting *Massey v. Tingle*, 867 So. 2d 235, 238 (¶6) (Miss. 2004)). In other words, "the non-movant cannot just sit back and remain silent, but he must

5

rebut by producing significant probative evidence showing that there are indeed genuine issues for trial." *McMichael v. Nu-Way Steel & Supply Inc.*, 563 So. 2d 1371, 1375 (Miss. 1990) (quoting *Newell v. Hinton*, 556 So. 2d 1037, 1041 (Miss. 1990)).

¶16. To prevail in a premises liability case, a plaintiff must prove the elements of duty, breach of duty, damages, and proximate causation. *See Wilbanks v. Hickman*, 198 So. 3d 393, 397 (¶10) (Miss. Ct. App. 2016). Thus, to avoid summary judgment, Griffin must show there is a genuine issue of material fact as to each of these elements. *See id.*

¶17. "When a person is injured on the premises of another, the duty owed depends on whether the person is an invitee, a licensee, or a trespasser at the time of the injury." *Rankin v. Matthews*, 197 So. 3d 933, 936 (¶7) (Miss. Ct. App. 2016). "A landowner's only duty to a licensee is to refrain from willfully or wantonly causing injury to him." *Id.* at 937 (¶9). "A landowner owes the highest duty to an invitee[,]" *Keith v. Peterson*, 922 So. 2d 4, 9 (¶10) (Miss. Ct. App. 2005), but even so the landowner "is not an insurer of the invitee's safety[.]" *Caruso v. Picayune Pizza Hut Inc.*, 598 So. 2d 770, 773 (Miss. 1992). Rather, a landowner "owes a duty to an invitee to exercise reasonable care to keep the premises in a reasonably safe condition and, if [he] is aware of a dangerous condition, which is not readily apparent to the invitee, he is under a duty to warn the invitee of such condition." *Jerry Lee's Grocery Inc. v. Thompson*, 528 So. 2d 293, 295 (Miss. 1988). Our Supreme "Court has recognized two classes of invitees: public invitee or business invitee." *Hudson v. Courtesy Motors Inc.*, 794 So. 2d 999, 1003 (¶11) (Miss. 2001).

¶18. "A public invitee is a person who is invited to enter or remain on land as a member

of the public for a purpose for which the land is held open to the public . . . ." *Id.* "On the other hand, a licensee is one who enters upon the property of another for his own convenience, pleasure or benefit pursuant to the license or implied permission of the owner." *Clark v. Moore Mem'l United Methodist Church*, 538 So. 2d 760, 763 (Miss. 1989). The subtle distinction between a public invitee and a licensee is said to "lie[] in the difference between an invitation and mere permission." *Id.* at 764.[2]

¶19. The circuit court concluded that Griffin was a "public invitee" at the time of her injury, but GYL argues that she was a mere licensee. If relevant and material facts are in dispute, the plaintiff's status "can be a jury question, but where the facts are not in dispute, the classification becomes a question of law for the trial judge." *Hudson*, 794 So. 2d at 1003 (¶11). However, for purposes of this appeal, we may assume that Griffin was a public invitee. For even if she were an invitee, the circuit court correctly determined that GYL was entitled to summary judgment.

¶20. A landowner owes an invitee a duty to keep the premises reasonably safe and to warn the invitee of any dangerous conditions on the premises that are not readily apparent. *Jerry*

---

[2] In *Clark*, the Mississippi Supreme Court held that "a church member who does not exceed the scope of a church's invitation, is an invitee while attending a church for church services or related functions." *Clark*, 538 So. 2d at 764. The Court reasoned: "Religious bodies . . . expressly and impliedly invite members to come and attend their services and functions. They hold their doors open to the public. While they do not charge admission fees . . . , churches do depend on contributions . . . in order that they may continue to be open to the public." *Id.*; *see also Alexander v. Jackson Cty. Historical Soc'y Inc.*, 227 So. 2d 291, 292 (Miss. 1969) (holding that visitors who paid for admission to a historical site under the care and control of a local historical society were "public invitees"); *City of Milton v. Broxson*, 514 So. 2d 1116, 1118 (Fla. 1st Dist. Ct. App. 1987) (holding that a spectator at a softball game at a city park was a public invitee).

7

*Lee's Grocery*, 528 So. 2d at 295.  Unless the dangerous condition was created by the landowner's own negligence, the plaintiff must prove that the landowner had actual or constructive knowledge of the condition.  *Id.*; *Jones v. Wal-Mart Stores E. LP*, 187 So. 3d 1100, 1103 (¶12) (Miss. Ct. App. 2016); *Stanley v. Boyd Tunica Inc.*, 29 So. 3d 95, 97 (¶9) (Miss. Ct. App. 2010).  Thus, "regardless of the invitee's precise theory of premises liability, proof that her injury was caused by a 'dangerous condition' is an essential element of her claim."  *Jones*, 187 So. 3d at 1104 (¶12) (citing *Stanley*, 29 So. 3d at 97 (¶10)).  "In other words, a property owner cannot be found liable for the plaintiff's injury where no dangerous condition exists."  *Stanley*, 29 So. 3d at 97-98 (¶10) (quotation marks omitted); *see also, e.g.*, *Adcock v. Wal-Mart Stores E. LP*, No. 3:10-cv-313-DPJ-FKB, 2011 WL 3047623, at *3 (S.D. Miss. July 25, 2011) ("It is axiomatic that no liability attaches absent a dangerous condition." (collecting cases)).  The landowner "is not an insurer against all injuries[,]" and mere proof that the invitee fell and was injured while on the premises is insufficient to establish liability.  *Jerry Lee's Grocery*, 528 So. 2d at 295.

¶21.    In the present case, Griffin argues that summary judgment should have been denied because the hole that allegedly caused her to fall was a "dangerous condition," and a reasonable inspection of the premises would have revealed its existence.  Thus, Griffin argues, GYL at least had constructive knowledge of the hole and should have repaired it or warned her of it.  She also argues that GYL's own claims that it regularly inspected the premises support an inference that it had actual knowledge of the hole.

¶22.    We conclude that Griffin's claim fails as a matter of law because the alleged "hole"

simply was not a "dangerous condition" within the meaning of Mississippi premises liability law. We recently addressed a similar issue in the context of a trip-and-fall in a parking lot. We observed that sidewalks or parking lots often "contain cracks and changes in elevation," and we held that such "minor imperfections or defects" are not "hazardous conditions" for purposes of a premises liability claim. *Jones*, 187 So. 3d at 1104 (¶14) (quoting *Knight v. Picayune Tire Servs. Inc.*, 78 So. 3d 356, 359 (¶9) (Miss. Ct. App. 2011)). A long line of Mississippi cases holds that cracks and uneven pavement are *not* dangerous conditions; they are simply issues that invitees "may normally expect to encounter as they traverse a parking lot or sidewalk." *Id.* at 1106 (¶17). "No property owner can be expected to maintain its sidewalks in a perfectly level condition, and where the defect consists of some slight variation between two adjoining paving blocks, no liability is imposed." *Id.* at 1104 (¶14) (quoting *Bond v. City of Long Beach*, 908 So. 2d 879, 881-82 (¶7) (Miss. Ct. App. 2005)).

¶23.     The same reasoning applies—indeed, with even greater force—to the present case. If a crack or uneven spot in a manmade sidewalk or parking lot is not a dangerous condition, it necessarily follows that a very minor indentation or depression on the side of a grassy, gently sloping hill also is not a dangerous condition. Griffin testified that the alleged "hole" was "maybe an inch [deep], two inches max," and "maybe four inches wide." To accept Griffin's argument that such a "hole" amounts to a dangerous condition would impose on landowners a duty to maintain all open lawns and fields in a perfectly level condition. Mississippi law does not require that of a landowner, even in paved areas of the premises. *See Jones*, 187 So. 3d at 1104 (¶14). No open, grass-covered space is going to be perfectly

9

level, not even a fairway on a golf course. *Cf. Hoffman v. City of New Orleans*, 771 So. 2d 217, 219 (La. Ct. App. 2000) ("One can hardly expect a public baseball outfield to be as smooth and even as the green of a golf course. Like any grass covered field it is bound to contain dips and inclines no matter what maintenance is performed."). Mississippi law does not impose liability based on a minor indentation on the side of a park's grassy hill.

¶24.  Griffin also alleges that she did not see the hole because the grass in the area was "overgrown." However, in her deposition she admitted that the grass, which had been mowed only three days prior to her fall, was only "[t]hree to four inches" high, which is hardly unusual. A one-inch-deep indentation is not transformed into a dangerous condition simply because three to four inches of grass grows in the area.[3]

¶25.  Because the "hole" that caused Griffin's injury was not a dangerous condition, her claim fails as a matter of law. *Jones*, 187 So. 3d at 1104 (¶12). Moreover, even if we assumed that it was a dangerous condition, GYL would be entitled to summary judgment because Griffin produced no evidence that would support a reasonable inference that GYL created the hole or that it had actual or constructive knowledge of the hole. *See Jones v.*

---

[3] Griffin relies heavily on *Alexander*, *supra*, but its facts are distinguishable. In that case, the plaintiff was injured when she stepped into a five-inch-deep hole surrounding one of several posts that the defendant Jackson County Historical Society had placed in the ground to mark the boundary between the parking lot and the lawn of the Old Spanish Fort in Pascagoula. *Alexander*, 227 So. 2d at 292. The hole was concealed by a "type of crawling grass [that] had grown up around the post," while "[t]he remainder of the yard was smoothly mowed." *Id.* Mississippi caselaw distinguishes between "naturally occurring defects," such as the hillside indentation at issue in this case, and unusual or unexpected conditions created by the defendant, such as the hole at the Old Spanish Fort, which may give rise to liability. *See Jones*, 187 So. 3d at 1105 (¶16) (quoting *City of Natchez v. Jackson*, 941 So. 2d 865, 869-70 (¶¶5-9) (Miss. Ct. App. 2006)).

*Imperial Palace of Miss. LLC*, 147 So. 3d 318, 319-21 (¶¶5-12) (Miss. 2014). There was no evidence, for example, that any other visitor had stumbled in the area, that GYL had received prior complaints about the hill, or that the "hole" at issue had existed for any significant length of time.

¶26. Likewise, there is no merit to Griffin's argument that there is a triable issue of fact with respect to GYL's alleged failure to conduct reasonable inspections. GYL, of course, maintains that it did conduct reasonable inspections of the park, and there is no evidence to the contrary. But in any event, Griffin also "failed to put forth any proof that reasonable inspections would have led to the discovery of the [one-inch-deep hole]," which, given the lack of evidence presented, "could have been created . . . only minutes prior to the injury." *Id.* at 322 (¶15). Thus, Griffin failed to present evidence creating any genuine issue of material fact as to GYL's actual or constructive knowledge of the hole or that a reasonable inspection would have revealed the hole. Accordingly, GYL was entitled to summary judgment for this reason as well.

## CONCLUSION

¶27. Griffin was injured when she tripped and fell as she walked down a grassy hill while wearing flip-flops and carrying a folding chair and baseball equipment. She was on GYL's property, but a landowner is not an insurer or strictly liable for all injuries that occur on its property, so mere proof that an invitee fell and was injured on the premises is not sufficient to create liability. Griffin's claim fails as a matter of law because the alleged one-inch-deep indentation, or "hole," that supposedly caused her to fall is not a dangerous condition. Under

11

Mississippi law, a landowner is not expected or required to keep open, grass-covered lawns or fields in a perfectly level condition. Moreover, Griffin presented no evidence that GYL had actual or constructive knowledge of the hole or that a reasonable inspection would have uncovered it. Therefore, the circuit court properly granted GYL's motion for summary judgment.

¶28. **THE JUDGMENT OF THE CIRCUIT COURT OF GRENADA COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR.**