# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00275-SCT

*ESTATE OF JAMES STANLEY WILLIAMS, BY AND THROUGH ITS ADMINISTRATRIX, ELOISE WILLIAMS AND SHERRIE CHANTEL WALKER, BY AND THROUGH HER MOTHER, NEXT FRIEND AND GUARDIAN, MARY A. WALKER*

*v.*

*CITY OF JACKSON MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/20/2001 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JOHN DOYLE MOORE |
| ATTORNEY FOR APPELLEE: | J. ANTHONY WILLIAMS |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 05/08/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DIAZ, JUSTICE, FOR THE COURT:**

¶1.     The Estate of James Stanley Williams, through its administratrix, Eloise Williams, and Sherrie Chantel Walker[1], through her mother, Mary A. Walker, filed suit in the Circuit Court of Hinds County, Mississippi against the City of Jackson seeking damages for the wrongful death of James Stanley Williams. The plaintiffs alleged that Jackson City firefighters from Station 20 acted with reckless disregard for the safety of Williams and others on September

---

[1]Sherrie is the minor daughter of James Stanley Williams, and Mary A. Walker.

15, 1998, when one of the fire engines collided with Williams's vehicle at an intersection while en route to a fire.

¶2. On December 2, 1999, the plaintiffs filed a motion for declaratory judgment which was denied August 31, 2000. On June 1, 2001, the City of Jackson moved for summary judgment on the basis that it is immune from liability under Miss. Code Ann. § 11-46-9(c). On December 21, 2001, the circuit court granted summary judgment for the City. From this final judgment, the plaintiffs filed a timely appeal alleging that the court erred in granting summary judgment. They raise the following issues for consideration by this Court:

**I. WHETHER THE ALLEGED CRIMINAL ACTIVITY OF JAMES WILLIAMS PRECLUDES RECOVERY BY HIS WRONGFUL DEATH BENEFICIARIES.**

**II. WHETHER THE CITY, ITS AGENTS OR EMPLOYEES, ACTED WITH RECKLESS DISREGARD FOR THE SAFETY AND WELL-BEING OF OTHERS.**

**FACTS**

¶3. On September 15, 1998, fire trucks from City of Jackson Fire Station 20 were dispatched around 9:00 p.m. to a fire at the corner of Martin Luther King Drive and Dorsey Street. The route traveled to get to this fire from Station 20 is south down Medgar Evers Boulevard, passing through the intersection of Medgar Evers Boulevard and Summit Drive, turning right onto Martin Luther King, continuing several blocks, and then turning left onto Dorsey Street. Two vehicles left Station 20 en route to the fire, both with their lights, sirens, and horns on. Rescue 20 was in the lead followed by truck 20, the ladder truck, driven by RDO Keith Irving (Irving).

2

¶4.     Although trained to drive the fire truck, Irving was not the ususal driver.  He was driving that day because the usual driver was on vacation.   The day before this accident occurred, Irving had a tooth removed and had been taking antibiotics, Tylenol III with codeine, ibuprofen and Tylenol P.M. to ease the pain.   Lieutenant Frankie Simpson (Simpson), Irving's superior, had questioned him about the effects of this medication and stated that they could get someone else to drive the truck if the medicine was affecting him in any way.  Irving said the medicine did not make him drowsy and that he felt fine to drive the truck.  Simpson testified that he was seated next to Irving and did not observe any drowsiness while Irving was driving the truck.  Simpson further stated that, based upon his eighteen years' experience as a fire truck driver, he believed that Irving did all he could to avoid the collision.  The last dose of Tylenol III that Irving had was around 8:05 p.m.

¶5.     Upon approaching the intersection of Medgar Evers Boulevard and Summit Drive, Irving noticed a vehicle, later determined to be that of James Stanley Williams (Williams), approaching the intersection from the west, which was on Irving's right.  The fire truck was traveling at a speed around 50 m.p.h. in a 40 m.p.h. speed zone.  Irving stated that the car did not yield the right of way to the fire truck and that it was trying to beat the fire truck across the intersection.  Irving swerved the vehicle to the left to avoid the collision, but was unable to do so.  The fire truck struck the car with its front passenger side corner in the area of the car's driver side door.  The force of the impact and the fact that Irving was veering left to avoid the collision caused the two vehicles to come to a rest in the  middle of Summit Drive, just east of the intersection.  The car driven by Williams caught fire, and the crew on truck 20 extinguished the fire.  Williams died in the accident.  Toxicology reports after the

3

accident showed that Williams's blood alcohol content was .20%, two times the legal limit in the state of Mississippi. This is not disputed by plaintiffs. Irving's blood test after the accident showed 36 ng/ml of codeine, an opiate found in Tylenol III. The therapeutic range for codeine is 30 to 120 ng/ml.

¶6.     Simpson and Irving both made internal affairs statements describing the events of September 15, 1998, as outlined above. David Thorton was riding on the back of the truck at the time of the collision, and although he could not see exactly what happened, he supported the claims of Irving and Simpson by saying he knew something was wrong when they turned, because he thought they were supposed to be going down Medgar Evers to Martin Luther King on the right.

¶7.     Three eyewitnesses, Cassandra Bilbo, Charlotte Bilbo, and William Thomas, gave written statements at the scene of the accident. Their statements described the accident the same way. Additionally, their eyewitness accounts state that Williams went around two vehicles that were stopped at the west side of the intersection in order to enter the intersection. A reconstruction of the accident was made by Sergeant Richard B. Davis (Davis) of the Jackson Police Department the day after the accident. Davis used skid marks, tire gouges in the pavement, points of impact of the vehicles and resting places of the vehicles to determine how the event occurred. When Davis was done with his report, the description of the accident matched Irving's and the other witnesses' description. In contrast, the plaintiffs presented the testimony of another eyewitness, Stella Howard (Howard). Howard stated that Williams had brought his car to a stop to wait until the fire truck passed through the intersection. It is unclear from her statement exactly where Williams allegedly

4

brought his car to a stop. Howard also stated that the fire truck could have avoided the wreck if it had been traveling at a safer speed and if the driver had reacted with a simple evasive move. Howard stated that the driver of the fire truck moved slowly and sluggishly.

## DISCUSSION

¶8. This Court applies a de novo standard of review of a trial court's grant or denial of summary judgment. *Hudson v. Courtesy Motors, Inc.*, 794 So.2d 999, 1002 (Miss. 2001); *Jenkins v. Ohio Cas. Ins. Co.*, 794 So.2d 228, 232 (Miss. 2001); *Heigle v. Heigle*, 771 So.2d 341, 345 (Miss. 2000). Our appellate standard for reviewing the grant or denial of summary judgment is the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure, summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact...." *Hudson*, 794 So.2d at 1002; *Jenkins*, 794 So.2d at 232; *Heigle*, 771 So.2d at 345. The burden of demonstrating that no genuine issue of fact exists is on the moving party. *Id*. "The presence of fact issues in the record does not per se entitle a party to avoid summary judgment. The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense ... [T]he existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact." *Hudson*, 794 So.2d at 1002 (quoting *Simmons v. Thompson Mach. of Miss.*, *Inc.,* 631 So.2d 798, 801 (Miss. 1994)).

    **I.**     **WHETHER THE ALLEGED CRIMINAL ACTIVITY OF JAMES WILLIAMS PRECLUDES RECOVERY BY HIS WRONGFUL DEATH BENEFICIARIES.**

¶9.    The Mississippi Tort Claims Act, Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2002), provides the exclusive remedy against a governmental entity and its employees for acts or omissions which give rise to a suit. *Lang v. Bay St. Louis Sch. Dist.*, 764 So.2d 1234, 1236 (Miss. 1999). Miss. Code Ann. § 11-46-9 (Supp. 1998) provides that a governmental entity and its employees acting within the course and scope of their employment shall not be liable for any claim based upon an act or omission enumerated therein. If the act or omissions fall under the subsections of § 11-46-9, then the governmental entity is exempt from liability. *Lang*, 764 So. 2d at 1237.

¶10.    The applicable exception to the City's liability is found in Miss. Code Ann. § 11-46-9(1)(c), which states that a governmental entity shall not be liable for any claim

> Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in disregard of the safety and well-being of any person not engaged in criminal activity at the same time of the injury.

¶11.    Fire Truck 20 was answering a fire call and was therefore providing "fire protection" within the meaning of § 11-46-9(1)(c). The City then has two avenues of immunity: (1) if the decedent was engaged in criminal activity, then the City is immune, and (2) if the decedent was not engaged in criminal activity, and if the City's employees did not act with reckless disregard, then the City is immune. Finding both avenues of immunity applicable, we affirm.

¶12.    It is undisputed that Williams's blood alcohol content was .20%, two times over the limit allowed under the law of Mississippi, at the time of the accident. Driving under the

6

influence is criminal activity in Mississippi. Miss. Code Ann. § 63-11-30 (1972), as amended. "While we have held that the criminal activity supporting [§ 11-46-9(1)(c)] must be more than fortuitous, we have never suggested that such activity must rise to the level of a felony." *Bridges v. Pearl River Valley Water Supply Dist.*,793 So.2d 584, 588 (Miss. 2001) (citing *City of Jackson v. Perry*, 764 So.2d 373 (Miss. 2000)). A person can be convicted of a misdemeanor in Mississippi for first and second DUIs and for a felony if convicted a third time. Therefore, Williams was engaged in criminal activity within the meaning of § 11-46-9(1)(c) at the time of this accident.

¶13. Plaintiffs contend that Williams's vehicle was safely stopped at the intersection when the fire truck ran into him. This claim is disputed by the testimony of numerous witnesses, and it is not supported by the facts which reveal that the collision occurred in the middle of the intersection. To create a genuine issue of material fact, the evidence must be significantly probative. *Murphree v. Fed. Ins. Co.*, 707 So. 2d 523, 529 (Miss. 1997). We conclude that the evidence presented by plaintiffs is not significantly probative.

¶14. Even had plaintiffs' contention been supported by the facts, it would not change the fact that Williams was intoxicated. It is therefore immaterial because it could have had no effect on the outcome of this action. Operating a vehicle involves both the moving and the stopping of a vehicle and when these are done under the influence of alcohol, it is considered criminal activity which, in this instance, operates to limit the duty owed by police and fire personnel under § 11-46-9(1)(c).

¶15. In order for recovery from a governmental entity to be barred because of the victim's criminal activity, the criminal activity has to have some causal nexus to the wrongdoing of the tortfeasor. *City of Jackson v. Perry*, 764 So.2d at 379. This is because the statute was "not designed to protect grossly negligent or intentional tortfeasors from liability where the fact that the victim is engaged in a criminal activity is merely fortuitous and has no relation to the transaction out of which liability would otherwise arise." *Id.*

¶16. Plaintiffs' contention that Williams was safely stopped at the intersection is contradicted by the testimony of several witnesses, the point of impact and rest, and the results of the accident reconstruction. The reality is that Williams either stopped in the middle of the intersection or tried to beat the fire truck through the intersection and failed. Either of these possibilities were poor decisions likely induced by Williams's intoxication. A sober person would not stop in the middle of an intersection with a fire truck coming at them. A sober person would also know that they should not try to beat a fire truck across an intersection. All the other drivers at the intersection yielded to the fire truck.

¶17. There is not enough credible evidence here to present any general issues of material fact. Furthermore, there is a clear nexus between the criminal activity of Williams and the injury suffered by him. Had he not been driving while intoxicated, Williams would not have attempted to beat the fire truck through the intersection and would not have been killed. Finding that there was a causal nexus between Williams's criminal activity and the actions of the City employees in this case, we conclude that the immunity afforded by § 11-46-9(1)(c) applies.

8

¶18.    This assignment is without merit.

**II.    WHETHER THE CITY, ITS AGENTS OR EMPLOYEES, ACTED WITH RECKLESS DISREGARD FOR THE SAFETY AND WELL-BEING OF OTHERS.**

¶19.    Next, plaintiffs argue that, despite Williams's negligence, they should still be allowed to recover if the City acted in reckless disregard for the safety and well-being of other motorists. A similar argument has recently been rejected by our Court of Appeals. *See Tory v. City of Edwards*, 829 So. 2d 1246 (Miss. Ct. App. 2002).

¶20.    In *Tory*, the Court of Appeals rejected the appellant's contention that the trial judge was required to make a finding as to whether the officers' conduct was in reckless disregard for the safety of others. The court reasoned that such a finding would have removed the statutory requirement that an individual bringing suit against a law enforcement officer not be involved in criminal activity at the time of injury. *Tory*, 829 So. 2d at 1249-50. We agree with the Court of Appeals. The Legislature decided to limit the recovery rights of individuals injured while committing criminal acts, and we decline to circumvent this reasonable decision.

¶21.    Moreover, there is no credible evidence that the City and its employees acted with reckless disregard for the safety of Williams or anyone else. Rather, the evidence supports the conclusion that the City employees were circumspectly carrying out their duties as fire department personnel, while Williams was driving under the influence of alcohol contrary to the laws of this State. Though the record reveals that Irving was taking medication, there is evidence that it was on the low side of the therapeutic range and that he was not impaired.

9

Williams's death is a tragedy, however, it was caused by his own negligence and disregard for the safety of himself and others. We decline to hold the City of Jackson responsible.

## CONCLUSION

¶22. Miss. Code Ann. § 11-46-9 (1)(c) exempts governmental entities from liability when the injured party was engaged in criminal activity. Because Williams was operating a motor vehicle while his blood alcohol content was undisputedly two times above the legal limit at the time of the accident, he was engaged in criminal activity. Therefore, this Court agrees that the City of Jackson is exempt from liability and affirms the trial court's judgment.

¶23. **AFFIRMED.**

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION.**

**McRAE, PRESIDING JUSTICE, DISSENTING:**

¶24. Since I disagree with the majority concerning the trial court's grant of summary judgment, I dissent. A motor vehicle moving violation should not be considered a "criminal activity." If it is, then why isn't Irving's conduct classified as "criminal activity" as he was under the influence the prescription pain killers the day of the accident? Additionally, Williams's apparent intoxication at the time of the accident should not prohibit his heirs from presenting their case at trial. Irving was under the influence of prescriptive pain relievers and was operating his vehicle in reckless disregard thereby fulfilling the immunity exception of the Mississippi Tort Claims Act.

10

¶25.    The majority finds that summary judgment was proper since Williams was legally intoxicated at the time of the accident and since some evidence tended to show that the accident may have been his fault.  This is putting the "cart before the horse."  The majority relies on a section of the Mississippi Tort Claims Act which provides immunity for injury and damages resulting from the victim's criminal activity.  Miss. Code Ann. § 11-46-9(1)(c).  However, this Court has stated that "the criminal activity supporting this exemption must be more than fortuitous."  ***Bridges v. Pearl River Valley Water Supply District***, 793 So.2d 584, 588 (Miss. 2001) (citations omitted).   Further, "the intent of the statute is to protect law enforcement officers and their governmental employers from lawsuits arising out of the performance of their duties, when an alleged victim is involved in criminal activity."  ***Id.***  As explained by this Court, the logic behind the statute does not address a situation such as this where  Irving, the government employee, was not involved in the "performance or execution of [his] duties or activities" in connection with Williams's alleged criminal activity.  Miss. Code Ann. § 11-46-9(1)(c).  Irving was not pursuing Williams or arresting Williams.  In fact, Irving's accident with Williams had no nexus and was only happenstance.  Further, there was evidence that Williams had preempted the intersection and the city driver should have yielded. Miss. Code Ann. § 63-3-801(1) (Rev. 1996) (driver approaching an intersection shall yield the right of way to a vehicle which has entered the intersection from a different highway).

¶26.    Additionally, the majority disregards Irving's own intoxication due to prescription pain relievers.  The Mississippi Tort Claims Act provides an exception to immunity when a government employee is acting in "reckless disregard of the safety and well being of any

person." Miss. Code Ann. § 11-46-9(1)(c). Irving was operating a fire truck while under the influence of prescription narcotics. He was operating a full size, heavy duty, metal fire truck while under the influence and haven taken Tylenol III, codeine, ibuprofen, and Tylenol P.M. within hours before the wreck and another dose of Tylenol III less than an hour before the wreck. His supervisor even knew of his condition and allowed him to drive the fire truck. Additionally, Irving was exceeding the speed limit by at least 10 m.p.h. This Court has held that "reckless disregard" is more than "gross negligence" but less than "specific intent." *City of Jackson v. Lipsey*, 834 So.2d 687, 691 (Miss. 2003) (citations omitted). Having reviewed the testimony and evidence presented, there was enough evidence to go to trial on the issue of reckless disregard.

¶27. The trial court erred in granting summary judgment to the City. I would reverse the judgment below and remand this case for trial. For these reasons, I respectfully dissent.