# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-00927-COA

BRADLEY A. MCELROY, SR.; HUNTER BLAKE MCELROY, A MINOR, BY AND THROUGH HIS FATHER AND NEXT FRIEND, BRADLEY A. MCELROY, SR.; RYALS SHIRAH MCELROY, A MINOR, BY AND THROUGH HIS FATHER AND NEXT FRIEND, BRADLEY A. MCELROY, SR.; AND ALL BENEFICIARIES OF THE ESTATE OF BRADLEY MCELROY, DENEACE REEL, ZACHARY DRAKE REEL, AND JASON DANE REEL

APPELLANTS

v.

CITY OF BRANDON, MISSISSIPPI, AND JUSTIN C. MACLAIN

APPELLEES

| | |
|---|---|
| DATE OF JUDGMENT: | 06/10/2014 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | DON H. EVANS |
| | ROBIN L. ROBERTS |
| | QUENTIN A. DANIELS |
| ATTORNEYS FOR APPELLEES: | ROBERT S. ADDISON |
| | MARK C. BAKER SR. |
| | STEVEN JAMES GRIFFIN |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| TRIAL COURT DISPOSITION: | GRANTED APPELLEES' MOTION FOR SUMMARY JUDGMENT |
| DISPOSITION: | AFFIRMED - 12/15/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     In November 2008, Officer Justin C. Maclain of the Brandon Police Department was

responding to an emergency call when his patrol car struck a vehicle driven by Bradley A. McElroy Jr. McElroy died from his injuries, and his heirs at law and wrongful-death beneficiaries filed a lawsuit against the City of Brandon, Mississippi (the City), and Officer Maclain.[1] The City and Officer Maclain subsequently filed a summary-judgment motion, which the circuit court granted.

¶2. On appeal to this Court, McElroy's beneficiaries argue that the circuit court erroneously granted summary judgment for the following reasons: (1) the record contains facts that show Officer Maclain acted with reckless disregard; and (2) immunity fails to apply as a matter of law because the determination of whether a causal nexus existed between McElroy's alleged criminal activity and Officer Maclain's conduct is a question of fact. Upon review, we find this matter is controlled by the Mississippi Supreme Court's holding in *Estate of Williams ex rel. Williams v. City of Jackson*, 844 So. 2d 1161 (Miss. 2003). Finding no error in the circuit court's grant of summary judgment, we affirm.

**FACTS**

¶3. Just after midnight on November 9, 2008, Officer Maclain was driving west on Highway 80 in Brandon when his patrol car struck McElroy's vehicle. At the time of the accident, Officer Maclain was responding to an emergency call about a burglary in progress at the Highpointe Apartments in Brandon. Officer Maclain testified that, pursuant to his

---

[1] The lawsuit also originally named the Brandon Police Department as a defendant. However, by the time the matter reached this Court on appeal, the lawsuit named only the City and Officer Maclain as defendants/appellees.

2

department's policies and procedures, he turned his siren off as he neared the apartment complex so he would not alert possible wrongdoers of his proximity.[2]  Officer Maclain further testified, however, that his patrol car's headlights and emergency lights, including the blue lights, wig-wag lights, and strobe lights, remained engaged and flashing.

¶4.    The accident-reconstruction report completed after the collision included a summary of three witness statements.  According to the report, all three witnesses corroborated Officer Maclain's testimony that his emergency lights were engaged.  The first witness, Patrick Jackson, did not see the actual collision.  However, Jackson stated that, when he heard the collision, he looked up and saw that the blue lights of Officer Maclain's patrol car were engaged.  The second witness, April Bailey, stated that she was driving west on Highway 80 when the collision occurred.  Bailey told law enforcement that she saw the blue lights from Officer Maclain's patrol car in her mirror and observed McElroy's car turn in front of Officer Maclain's patrol car.  The third witness, Derrick Taylor, also failed to see the actual collision. However, Taylor stated that he heard the crash, and when he looked up, he noted that the patrol car had its blue lights engaged.

¶5.    In a subsequent affidavit, Taylor contradicted the statement attributed to him in the accident-reconstruction report.  In his affidavit, Taylor again stated that he heard a loud impact and then immediately looked and saw that a collision had occurred.  However, Taylor

---

[2] The Brandon Police Department's manual states that "[e]mergency signal devices may be deactivated at a distance from the scene (to be determined by the vehicle operator) [so] as not to alert subjects of law enforcement['s] proximity."

3

further stated that the lights on Officer Maclain's patrol car did not turn on until the car came to a complete stop.

¶6. The record also contains a statement signed by Jose Benevides, who did not witness the accident but stated that he saw Officer Maclain's patrol car drive by right before the accident. According to Benevides, the patrol car's emergency lights were not engaged when the car passed him. As the record reflects, at the time of the accident, Benevides dated Crystal Hines, the passenger in McElroy's car, and Benevides was waiting for McElroy and Hines to arrive so they could all go to a nightclub.

¶7. During his deposition, Officer Maclain testified that traffic was light as he approached the intersection where the collision occurred. As his patrol car neared the intersection of Highway 80 and the Interstate 20 exit ramp, Officer Maclain observed McElroy's vehicle accelerate and then run the stop sign at the intersection. D'Kota Miller, the son of fellow police officer Allen Parfait, was sitting in the passenger seat of Officer Maclain's patrol car when the accident occurred.[3] Miller also testified that McElroy's vehicle ran the stop sign at the intersection. Although Officer Maclain testified that he swerved and tried to avoid a

---

[3] According to deposition testimony, Miller called his father the night of the accident and asked Officer Parfait to pick him up and take him home. Because he could not leave work at that time, Officer Parfait asked Officer Maclain if he could pick up Miller. At the time of the accident, both officers lived in the Highpointe Apartments where the reported burglary occurred. Because the apartment door was locked and Miller was unable to find his key, Officer Maclain let Miller ride along in his patrol car until Officer Parfait could meet them. Although Officer Maclain failed to obtain authorization before allowing Miller to remain in his patrol car, Officer Maclain testified that he felt this course of action was better than leaving Miller to stand alone in the cold outside the locked apartment.

4

collision, his patrol car struck the driver's side door of McElroy's vehicle.

¶8. The forensic-toxicology report revealed the presence of marijuana in McElroy's system at the time of the collision. The report further revealed that nineteen-year-old McElroy possessed a blood-alcohol content (BAC) of .073 percent, which was above the legal limit of .02 percent for minors. *See* Miss. Code Ann. § 63-11-30(3) (Rev. 2004). According to the affidavit of Dr. Robert Cox, a board-certified toxicologist, the level of active marijuana in McElroy's system likely indicated that McElroy had used marijuana within the last three hours. Dr. Cox also opined that, based on McElroy's alcohol level, McElroy was impaired at the time of the accident.

¶9. The record contains contradictory evidence as to whether the posted speed limit in the area of the collision was actually thirty-five miles per hour or forty-five miles per hour. Regardless of the posted speed limit, the accident-reconstruction report determined that Officer Maclain, who was responding to a burglary-in-progress call, was driving well over the posted speed limit at seventy-two miles per hour when his car struck McElroy's vehicle. Neither McElroy nor Hines, his passenger, wore a seatbelt at the time of the accident. As a result of the collision, Hines sustained multiple facial fractures, and McElroy sustained blunt-force injuries that resulted in his death.

¶10. In her deposition testimony, Hines stated that she and McElroy attended the same party prior to the accident. After the party, Hines rode with McElroy to meet Hines's boyfriend, Benevides, and McElroy's roommate in Brandon. According to Hines, she saw

5

McElroy holding a beer at the party, but she did not see him consume any other alcohol or any drugs. Although Hines possessed vodka in her purse at the time of the accident, she testified that she planned to drink the alcohol once she arrived at the nightclub and that she consumed no alcohol or drugs prior to the collision.

¶11. According to Hines's testimony, she never saw Officer Maclain's patrol car prior to the accident. Hines testified that the last thing she remembered was McElroy's car coming to a complete stop, and she stated that she did not recall any further events until about two days later when she realized she was in the hospital. As a result of the accident, Hines suffered a broken jaw in three places. Hines testified that, due to her broken jaw, the only way she could communicate after the accident was by pointing and nodding her head. She therefore testified that she failed to see how she could have spoken to a law-enforcement officer and provided a statement the night she was admitted to the hospital.

¶12. A report filed by Deputy Glenn Dixon of the Rankin County Sheriff's Department directly contradicted Hines's deposition testimony. Deputy Dixon testified that he was on duty when he received a dispatch call informing him of the accident. By the time Deputy Dixon arrived at the collision site, Hines had already been taken to the hospital. Deputy Dixon testified that he took statements from Officer Maclain and two witnesses at the scene, and then he interviewed Hines at the hospital.

¶13. According to Deputy Dixon's deposition testimony, Hines was able to provide a statement rather than merely nod her head in response to questions. In fact, Deputy Dixon

6

testified that, during their interview, Hines stated that she and McElroy saw Officer Maclain's patrol car approaching before McElroy entered the intersection at Highway 80. Hines told Deputy Dixon that Officer Maclain's blue lights were turned on and that, although McElroy initially stopped at the stop sign, he then tried to beat Officer Maclain's patrol car through the intersection. Hines further told Deputy Dixon that she had been drinking earlier that night but that she did not know whether McElroy had also been drinking.

¶14. Further contradicting Hines's deposition testimony, the accident-reconstruction report stated that Hines told law enforcement that she and McElroy saw Officer Maclain's patrol car, with its lights on, approaching them. The report also stated that Hines said McElroy thought they could beat the patrol car through the intersection and that he proceeded to pull into the intersection in front of Officer Maclain's oncoming patrol car. The accident-reconstruction report found no wrongdoing by Officer Maclain and concluded that McElroy contributed to the collision because he was under the influence of alcohol and marijuana and failed to yield to Officer Maclain's approaching patrol car.

¶15. On July 28, 2009, McElroy's wrongful-death beneficiaries and heirs at law filed a complaint against Officer Maclain and the City under the Mississippi Tort Claims Act (MTCA). The beneficiaries argued that Officer Maclain acted with gross and reckless negligence and that Officer Maclain's negligence could be directly imputed to the City and the police department through respondeat superior. The City and Officer Maclain responded that they were entitled to sovereign immunity under the MTCA because, at the time of the

7

collision, Officer Maclain was acting within the course and scope of his employment and McElroy was engaged in criminal activity. *See* Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2012).

¶16. On February 7, 2013, the City and Officer Maclain filed a motion for summary judgment. The summary-judgment motion asserted that the City and Officer Maclain were immune under section 11-46-9(1)(c) because "Officer Maclain was engaged in police[-]protection activities, and Bradley McElroy was engaged in criminal activity that had a clear causal nexus to his injuries." The City and Officer Maclain further contended that, even if McElroy had not been engaged in criminal activity at the time of the accident, immunity still existed because Officer Maclain's actions failed to constitute reckless disregard for the safety and well-being of others.

¶17. After considering the evidence and testimony, the circuit court granted summary judgment in favor of Officer Maclain and the City. Based upon Mississippi precedent, the circuit court agreed that the City and Officer Maclain possessed immunity pursuant to section 11-46-9(1)(c). Aggrieved by the circuit court's grant of summary judgment, McElroy's beneficiaries appeal to this Court, asserting that material issues of fact remain in dispute.

## STANDARD OF REVIEW

¶18. Governmental entities and their employees are exempt from liability under certain circumstances. *See* Miss. Code Ann. § 11-46-9 (Rev. 2012). "This exemption, like that of qualified or absolute immunity, is an entitlement not to stand trial rather than a mere defense

8

to liability and, therefore, should be resolved at the earliest possible stage of litigation." *Mitchell v. City of Greenville*, 846 So. 2d 1028, 1029 (¶8) (Miss. 2003). As a result, "immunity is a question of law and is a proper matter for summary judgment . . . ." *Id.* The appellate court "reviews errors of law, which include the proper application of the [MTCA], de novo." *Rayner v. Pennington*, 25 So. 3d 305, 308 (¶10) (Miss. 2010) (citation omitted).

¶19. This Court also reviews de novo the trial court's grant or denial of summary judgment. *McCreary v. City of Gautier*, 89 So. 3d 703, 707 (¶8) (Miss. Ct. App. 2012). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). "The burden of demonstrating that no genuine issue of [material] fact exists is on the moving party." *Estate of Williams*, 844 So. 2d at 1164 (¶8). Furthermore, we view the evidence in the light most favorable to the nonmovant. *Hudson v. Courtesy Motors Inc.*, 794 So. 2d 999, 1002 (¶7) (Miss. 2001).

**DISCUSSION**

¶20. In granting summary judgment, the circuit court found that the City and Officer Maclain were exempt from liability under the MTCA, which "provides the exclusive remedy against a governmental entity and its employees for acts or omissions that give rise to a suit." *McCreary*, 89 So. 3d at 707 (¶10) (citation omitted). Relevant to the present case, section 11-46-9(1)(c) establishes:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury[.]

As set forth in section 11-46-9(1)(c), a person engaged in criminal activity at the time of his injury is barred from recovering from a governmental entity. With regard to the present case, we find that the precedent established in *Estate of Williams* controls the application of the law to the facts and bars any recovery from the City by McElroy's beneficiaries.

¶21. At the time of the accident, Officer Maclain was responding to a burglary-in-progress call. He was therefore engaged in "police protection" pursuant to section 11-46-9(1)(c), and the City possessed two possible avenues of immunity: "(1) if the decedent was engaged in criminal activity, then the City is immune, and (2) if the decedent was not engaged in criminal activity, and if the City's employee[] did not act with reckless disregard, then the City is immune." *Estate of Williams*, 844 So. 2d at 1164 (¶11).[4]

¶22. "For recovery from a governmental entity to be barred because of the victim's criminal activity, the criminal activity must have some causal nexus to the wrongdoing of the tortfeasor." *McCreary*, 89 So. 3d at 708 (¶13) (citing *City of Jackson v. Perry*, 764 So. 2d 373, 379 (¶25) (Miss. 2000)). Our precedent "recognizes that section 11-46-9 was 'not

---

[4] *See also Bridges v. Pearl River Valley Water Supply Dist.*, 793 So. 2d 584, 587-88 (¶9) (Miss. 2001) (discussing the exception to governmental immunity provided by section 11-46-9(1)(c)).

designed to protect grossly negligent or intentional tortfeasors from liability where the fact that the victim is engaged in a criminal activity is merely fortuitous and has no relation to the transaction out of which the liability would otherwise arise.'" *Id.* (quoting *Perry*, 764 So. 2d at 379 (¶25)).

¶23. In *Estate of Williams*, the estate of James Williams sued the City of Jackson after Williams died in a collision with a municipal fire engine. *Estate of Williams*, 844 So. 2d at 1162 (¶1). Williams's estate argued that the firefighters acted with reckless disregard for the safety of Williams and others while responding to a fire. *Id.* However, the evidence reflected that Williams failed to yield the right-of-way to the approaching fire truck and instead tried to beat the fire truck through the intersection. *Id.* at 1163 (¶5). Toxicology reports revealed that Williams's BAC was twice the legal limit. *Id.*

¶24. In considering whether governmental immunity applied, the supreme court stated that "[o]perating a vehicle involves both the moving and the stopping of a vehicle[,] and when these are done under the influence of alcohol, it is considered criminal activity [that], in this instance, operates to limit the duty owed by police and fire personnel under [section] 11-46-9(1)(c)." *Estate of Williams*, 844 So. 2d at 1165 (¶14). The supreme court found that a clear causal nexus existed between Williams's criminal activity and the firefighters' actions, stating that, "[h]ad [Williams] not been driving while intoxicated, Williams would not have attempted to beat the fire truck through the intersection and would not have been killed." *Id.* at (¶17). In addition, the supreme court found that, unlike Williams, "[a] sober

11

person would . . . know that [he] should not try to beat a fire truck across an intersection." *Id.* at (¶16). Based on its findings, the supreme court concluded that governmental immunity applied to bar recovery by Williams's estate. *Id.* at (¶17).

¶25.    In determining whether the City and Officer Maclain met their burden of proof for summary judgment, we acknowledge that Officer Maclain was responding to a burglary-in-progress call at the time of the collision.  To support their summary-judgment motion, the City and Officer Maclain offer the findings of the forensic-toxicology report as evidence of McElroy's impairment while driving at the time of the accident.  According to the report, McElroy possessed marijuana in his system at the time of the collision.  *See* Miss. Code Ann. § 41-29-139 (Supp. 2015).  The report also revealed that nineteen-year-old McElroy possessed a BAC of .073 percent, which surpassed Mississippi's legal limit for minors of .02 percent.  *See* Miss. Code Ann. § 63-11-30(3).  A review of the record reflects no dispute as to McElroy's BAC or the level of marijuana in his system at the time of the accident.  In Dr. Cox's opinion, the level of active marijuana in McElroy's system likely indicated that McElroy had used marijuana within the three hours prior to the accident.  Dr. Cox further stated that McElroy's alcohol level indicated that McElroy was impaired at the time of the accident.

¶26.    After reviewing the record and Mississippi precedent, we find that *Estate of Williams* controls the question of whether a causal nexus existed between McElroy's criminal activity at the time of his death and Officer Maclain's actions.  *See Estate of Williams*, 844 So. 2d at

1164-65 (¶¶9-17).[5] Based on the supreme court's holding in *Estate of Williams*, we find that a causal nexus existed in the present case. We therefore find that the governmental immunity afforded by section 11-46-9(1)(c) applies to bar recovery by McElroy's beneficiaries. As the supreme court explained in *Estate of Williams*, even if the facts support the beneficiaries' assertion that McElroy stopped his vehicle at the intersection, this fails to change the undisputed evidence showing that McElroy possessed marijuana in his system at the time of the accident and possessed a BAC that exceeded the legal limit for Mississippi minors. *See Estate of Williams*, 844 So. 2d at 1165 (¶14); Miss. Code Ann. § 41-29-139; Miss. Code Ann. § 63-11-30(1), (3).

¶27. Since the record reflects undisputed evidence that McElroy engaged in criminal activity at the time of the accident, section 11-46-9(1)(c) and *Estate of Williams* bar recovery by his beneficiaries. As the supreme court stated in *Estate of Williams*, "[o]perating a vehicle involves both the moving and the stopping of a vehicle[,] and when these are done under the influence of alcohol, it is considered criminal activity [that], in this instance, operates to limit the duty owed by police and fire personnel under [section] 11-46-9(1)(c)." *Estate of Williams*, 844 So. 2d at 1165 (¶14).

¶28. Based on a review of the record and applicable caselaw and statutory law, we affirm the circuit court's judgment. In so doing, we find no error in the circuit court's determination

---

[5] *Cf. City of Jackson v. Powell*, 917 So. 2d 59, 70 (¶40) (Miss. 2005) (distinguishing *Estate of Williams* by explaining that the deceased's criminal activity in *Estate of Williams* directly caused his injuries).

that McElroy's criminal activity exempted Officer Maclain and the City from liability pursuant to section 11-46-9(1)(c). Accordingly, this issue lacks merit, and we therefore affirm the circuit court's grant of summary judgment in favor of the City and Officer Maclain.

¶29. **THE JUDGMENT OF THE RANKIN COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, FAIR AND WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., NOT PARTICIPATING.**