WILSON, J., FOR THE COURT:
*924 ¶ 1. Deputy Terry Smith of the Panola County Sheriff's Department was involved in a two-vehicle accident on Highway 6 in Panola County with Lynda and William Irwin. The Irwins died as a result of injuries sustained in the crash, and their daughter Beverly Irwin-Giles filed suit against Panola County under the Mississippi Tort Claims Act (MTCA). The county subsequently moved for summary judgment, relying on the "police protection" exemption from the MTCA's waiver of sovereign immunity. Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2012). The circuit court granted the county's motion, finding that there was no evidence that Smith "acted in reckless disregard of the [Irwins'] safety and well-being." Id. For the reasons explained below, we conclude that Irwin-Giles presented sufficient evidence to survive summary judgment. Therefore, we reverse and remand for further proceedings consistent with this opinion.
FACTS AND PROCEDURAL HISTORY
¶ 2. Around 1 p.m. on July 21, 2015, Lynda and William Irwin were traveling west on Highway 6 in Panola County in their Buick Rainier SUV. Lynda was driving, and William was in the front passenger seat. In Panola County, Highway 6 is a four-lane divided highway that runs concurrent with U.S. Route 278.
¶ 3. As the Irwins were traveling west on Highway 6, Deputy Terry Smith of the Panola County Sheriff's Department was driving north on Lawrence Brothers Road, which crosses Highway 6 and becomes Terza Road to the north of Highway 6. There is a stop sign on Lawrence Brothers Road at its intersection with Highway 6. Deputy Smith was driving a Chevrolet Silverado owned by the Panola County Sheriff's Department. He was returning to his office after unsuccessfully attempting to locate a suspect in a case; he had not turned on his lights or sirens, and he was in no particular hurry.
¶ 4. Smith safely crossed the eastbound lanes of Highway 6 into the median of the highway. Then, as Smith attempted to cross the westbound lanes of Highway 6 onto Terza Road, he entered the path of the Irwins' Buick. The Buick hit the front passenger side of Smith's truck.
¶ 5. Data recovered from the Buick's "black box"[1] indicated that the Buick was traveling seventy-five miles per hour just prior to the collision, which was ten miles per hour faster than the posted speed limit. Smith testified in his deposition that he never saw the Buick before the collision. He said he remembered "stopping and waiting for traffic to be clear," but he could not recall how long he waited or how many vehicles he may have waited on. There were no obstructions blocking his view of oncoming traffic. The Mississippi Highway Patrol (MHP) investigated the collision, and MHP's Uniform Crash Report indicated that Smith failed to yield the right of way.
¶ 6. Both Smith's truck and the Irwins' Buick eventually came to rest off the road to the north of Highway 6. Smith suffered a fractured ankle and contusions in the crash but was able to get out of his truck. The Irwins both sustained severe and ultimately fatal injuries.
*925 ¶ 7. Irwin-Giles retained an accident reconstruction specialist, Tim Corbitt, who examined MHP's report, photographs taken by MHP, and data downloaded from both vehicles' black boxes. In his report, Corbitt states that data from the Silverado's black box indicates that its speed increased from 25 mph to 30 mph in the 2.5 seconds before the crash. Based on this data, Corbitt opines that Smith did not stop either at the stop sign at the intersection of Lawrence Brothers Road and Highway 6 or in the median prior to continuing into the westbound lanes of Highway 6.
¶ 8. Irwin-Giles gave pre-suit notice under the MTCA and then filed suit against Panola County. In its answer, the county asserted, among other defenses, immunity pursuant to Mississippi Code Annotated section 11-46-9(1)(c). After limited discovery, the county filed a motion for summary judgment, arguing that it was immune from liability under section 11-46-9(1)(c) because Smith had not "acted in reckless disregard of the [Irwins'] safety and well-being" and because Lynda was "engaged in criminal activity at the time of the injury" (speeding).
¶ 9. The circuit court found that the evidence did not establish any causal nexus between Lynda's speeding and her injuries and also ruled that Lynda's "speeding would not be imputed to William." However, the circuit court granted the county's motion for summary judgment after finding that Irwin-Giles failed to create a genuine issue of material fact as to whether Smith had "acted in reckless disregard." The court reasoned that "Smith was not driving 100 mph" and "was not pursuing anyone." The court also noted that Smith did not proceed blindly or enter a dangerous intersection. The court concluded that if Smith ran the stop sign and failed to yield, he might have been negligent, but his actions still did not rise to the level of "reckless disregard." Irwin-Giles filed a timely notice of appeal from the circuit court's order granting summary judgment.
ANALYSIS
¶ 10. "This Court applies a de novo standard of review to a grant of summary judgment and to issues involving the interpretation and application of the MTCA." Lane v. Miss. Dep't of Transp. , 220 So.3d 254, 256 (¶ 4) (Miss. Ct. App. 2017). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c). The evidence must be considered "in the light most favorable to the nonmoving party." Vo v. Hancock Cty. , 989 So.2d 414, 416 (¶ 6) (Miss. Ct. App. 2008). "We consider as well that the non-moving party is entitled to the benefit of all reasonable favorable inferences that may be drawn from the record." Burkhalter & Co. v. Wissner , 602 So.2d 835, 838 (Miss. 1992).
¶ 11. The MTCA provides that a governmental entity "shall not be liable for any claim" that arises
out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.
Miss. Code Ann. § 11-46-9(1)(c).[2]
¶ 12. This statutory provision affords a governmental entity "two avenues *926 of immunity: (1) if the decedent was engaged in criminal activity, then the [governmental entity] is immune, and (2) if the decedent was not engaged in criminal activity, and if the [governmental entity's] employees did not act with reckless disregard, then the [governmental entity] is immune." Estate of Williams ex rel. Williams v. City of Jackson , 844 So.2d 1161, 1164 (¶ 11) (Miss. 2003). On appeal, the county argues that both "avenues" lead to immunity and summary judgment in this case. We first address the circuit court's ruling that the county is entitled to summary judgment because there is no genuine issue of material fact and Deputy Smith did not act in reckless disregard of the Irwins' safety. Second, we address the county's alternative argument that Irwin-Giles's claims are barred because Lynda was engaged in "criminal activity" (speeding) at the time of her injury.
I. Reckless Disregard
¶ 13. Our Supreme Court has held that "[r]eckless disregard is a higher standard than simple or gross negligence, but less than an intentional act." Vo , 989 So.2d at 416 (¶ 8) (citing City of Jackson v. Brister , 838 So.2d 274, 280 (¶ 23) (Miss. 2003) ). "This standard 'embraces willful or wanton conduct' and usually is accompanied by a 'conscious indifference to consequences' and a deliberate disregard 'that risk and the high probability of harm are involved.' " Id. (quoting Willing v. Estate of Benz , 958 So.2d 1240, 1247 (¶ 17) (Miss. Ct. App. 2007) ) (brackets omitted). Our Supreme Court has also held that reckless disregard "is a failure or refusal to exercise any care, while negligence is a failure to exercise due care." Maye v. Pearl River Cty. , 758 So.2d 391, 395 (¶ 21) (Miss. 1999). Our Supreme Court and this Court have addressed the issue of "reckless disregard" in several prior cases involving car crashes.
¶ 14. For example, in Maye , the Supreme Court held that a Pearl River County deputy sheriff acted with "reckless disregard" when he backed his car out of a parking spot and up an incline toward the entrance to the parking lot, where he collided with a car entering the lot. Id. at 394-95 (¶¶ 18, 22, 24). Although the deputy checked his rearview mirrors before he backed up, he admitted that his mirrors did not enable him to see traffic entering the lot, and there was evidence that he ignored the other car's honking horn. Id. The Supreme Court reasoned that "he backed out knowing he could not see what was behind him," and this amounted to reckless disregard ("a failure or refusal to exercise any care"), rather than just simple negligence. Id. at 395 (¶ 21).
¶ 15. This Court subsequently distinguished Maye in Vo , supra . In Vo , a Hancock County deputy sheriff failed to check behind him before backing out his spot in a parking lot "at a very low rate of speed," which resulted in a low-impact collision with another car. Vo , 989 So.2d at 417-18 (¶¶ 12-13). We affirmed the circuit court's order granting summary judgment in favor *927 of Hancock County, reasoning that the deputy's actions amounted to, at most, "simple negligence." Id. Indeed, we stated that "[a]n individual's failure to look is perhaps the most common cause of traffic accidents." Id. at 418 (¶ 12). We distinguished Maye , emphasizing that the deputy in that case had backed up the incline despite knowing that he would not be able to see traffic entering the lot behind him. Id. at (¶ 13).
¶ 16. In Maldonado v. Kelly , 768 So.2d 906 (Miss. 2000), the Supreme Court reversed a circuit court's judgment in favor of a plaintiff who was injured in a collision with a Hinds County deputy sheriff. In Maldonado , the deputy came to a complete stop at a stop sign at a four-way intersection. The deputy knew that the intersection was only a two-way stop and that cross traffic did not have a stop sign, his view of oncoming traffic was partially blocked by a water tower, and he considered the intersection to be "a very dangerous intersection." Id. at 908 (¶¶ 2-3). Nonetheless, the Supreme Court rendered judgment in favor of the county, finding that the deputy "did what any ordinary person in his situation would have done. He stopped, looked, and then proceeded." Id. at 911 (¶ 12). The Court reasoned that the deputy might "have been negligent," but he did not act with reckless disregard. Id.
¶ 17. In reviewing the circuit court's ruling granting summary judgment in favor of the county, we must consider the evidence in the light most favorable to Irwin-Giles, and she is "entitled to the benefit of all reasonable favorable inferences that may be drawn from the record." Burkhalter & Co. , 602 So.2d at 838. Applying this standard, we conclude that there is a genuine issue of material fact as to whether Smith "acted in reckless disregard" of the Irwins' safety. Smith testified that he came to a stop at the stop sign and again in the median, where he says that he stopped to wait for westbound traffic to clear. However, based on Corbitt's analysis of the "black box" data, Irwin-Giles presented evidence that Smith did not stop or even slow down at the stop sign or in the median before proceeding into the westbound lanes of Highway 6 and directly into the path of the Irwins' Buick. Moreover, although Smith testified that he looked both ways for oncoming traffic when he stopped, he acknowledged that there were no obstructions to his vision. The fact that Smith's view was not obstructed permits a reasonable inference that Smith did not look for traffic before he crossed Highway 6. Thus, the fact-finder could conclude from the evidence in the record that Smith drove across a four-lane divided highway without stopping at a stop sign, or even slowing down, and without checking for oncoming traffic. This would be sufficient for the fact-finder to conclude that Smith "fail[ed] or refus[ed] to exercise any care," which our Supreme Court has characterized as reckless disregard. Maye , 758 So.2d at 395 (¶ 21) (emphasis added).
¶ 18. Our prior decision in Vo is distinguishable from the present case. In Vo , there was evidence that the deputy failed to check his mirrors before he backed up, but he also backed up slowly in a parking lot, resulting in a low-impact collision. Thus, the deputy in Vo exercised at least some degree of care, even if he was negligent. Moreover, as this case tragically illustrates, driving across a major four-lane divided highway-allegedly without stopping, yielding, or looking for oncoming traffic-obviously involves far greater risks to the "safety and well-being" of others, see Miss. Code Ann. § 11-46-9(1)(c), than backing up slowly in a parking lot.
*928 ¶ 19. Maldonado , supra , is also distinguishable. There, the Supreme Court found that the deputy looked both ways before proceeding into the intersection, and his failure to see the plaintiff's car could be explained by an obstruction to his vision and the "dangerous" nature of the particular intersection. Here, in contrast, there were no obstructions to Smith's vision. And based on the "black box" data and Corbitt's affidavit and report, a fact-finder could reasonably infer that Smith must not have looked for oncoming traffic, or else he would have seen the Irwins' Buick. For these reasons, we conclude that Irwin-Giles presented sufficient evidence to create a genuine issue of material fact and survive summary judgment on the issue of reckless disregard.
II. Criminal Activity
¶ 20. As noted above, a governmental entity is also immune from liability for the acts or omissions of an employee engaged in police protection activities if the injured party was "engaged in criminal activity at the time of injury." Miss. Code Ann. § 11-46-9(1)(c) ; see Williams , 844 So.2d at 1164 (¶ 11). In this case, the circuit court found that there was no proof that Lynda could have avoided the wreck had she not been speeding. The court also concluded that Lynda's speeding could not be imputed to William. Therefore, the court did not grant the county's motion for summary judgment on this ground. However, the county urges us to affirm on this alternative ground. See Brocato v. Miss. Publishers Corp. , 503 So.2d 241, 244 (Miss. 1987) (holding that an appellee is "entitled to raise any alternative ground" for summary judgment that was raised in the court below).
¶ 21. We agree with the circuit court that Lynda's speeding cannot be imputed to William. William was "not engaged in criminal activity at the time of [his] injury," Miss. Code Ann. § 11-46-9(1)(c), and Irwin-Giles's claim for William's injuries and death is not derivative of her claim for Lynda's injuries and death. See Giles v. Brown , 962 So.2d 612, 615-16 (¶¶ 13-14) (Miss. Ct. App. 2006) (holding that father's claims arising out of an ATV accident were barred by his "criminal activity" because he was illegally driving the ATV on a highway, driving with a suspended license, and guilty of reckless driving; however, the claims of his sons, who were mere passengers on the ATV, were not barred). Accordingly, Irwin-Giles's claim for William's injuries and death is not barred by Lynda's speeding.
¶ 22. Irwin-Giles's claim based on Lynda's injuries and death requires further analysis. To begin with, our Supreme Court has held that "[m]isdemeanor traffic offenses are criminal activities within the statute." Miss. Dep't of Pub. Safety v. Durn , 861 So.2d 990, 997 (¶ 20) (Miss. 2003) (holding that an illegal left turn is "criminal activity" within the meaning of the statute). Therefore, Lynda's speeding was "criminal activity" within the meaning of the statute. See Miss. Code Ann. §§ 63-3-201 & 63-3-501 (Rev. 2013).
¶ 23. Although a literal reading of section 11-46-9(1)(c) might bar any claim by a person "engaged in criminal activity at the time of injury," our Supreme Court has interpreted the statute's language more narrowly. The Court has held that the statute "is not designed to protect grossly negligent or intentional tortfeasors from liability where the fact that the victim is engaged in a criminal activity is merely fortuitous and has no relation to the transaction out of which the liability would otherwise arise." City of Jackson v. Perry , 764 So.2d 373, 379 (¶ 25) (Miss. 2000). The Court reasoned that "[i]t would be anomalous to suggest, for example, that a recklessly *929 negligent officer who runs down a pedestrian on the sidewalk, escapes liability on a showing that the pedestrian was then and there in possession of untaxed whisky." Id. Thus, an injured party's "criminal activity" will not bar her claim unless there is some "causal nexus" between the criminal activity and her injuries. See Williams , 844 So.2d at 1165 (¶¶ 15-17).
¶ 24. The parties disagree as to the precise nature of the "causal nexus" required by our precedents. The county argues that the claim is barred if there is a nexus between the injured party's criminal activity and her injuries, while Irwin-Giles contends that the relevant question is whether there is a nexus between the injured party's criminal activity and the tortfeasor's police protection activities . That is, Irwin-Giles argues that a claim is not barred unless "the activities of the officer in carrying out his duties in protecting the public are directed toward the criminal activities of the [injured party]." This point of disagreement is significant in this case because there is no nexus between what Deputy Smith was doing-returning to his office after an unsuccessful search for a suspect in an unrelated crime-and Lynda's speeding. Indeed, Smith testified that he never even saw the Irwins' Buick until after the collision.
¶ 25. While some statements in prior opinions support Irwin-Giles's position,[3] we conclude that the county's position is more consistent with our precedent. In Williams , supra , an intoxicated driver was killed when he drove into an intersection and into the path of a fire truck responding to a fire. Id. at 1162-63 (¶¶ 3-7). The Supreme Court held that the decedent's criminal activity (driving with a .20% blood-alcohol content) barred a wrongful death claim against the city because "there [was] a clear nexus between the criminal activity of Williams and the injury suffered by him ." Id. at 1165 (¶ 17) (emphasis added); accord Durn , 861 So.2d at 997 (¶ 22) (discussing Williams ). Without significant discussion, the Supreme Court's opinion also stated "that there was a causal nexus between Williams's criminal activity and the actions of the [firefighters]," Williams , 844 So.2d at 1162-63 (¶¶ 3-7) ; however, Williams's driving under the influence logically had nothing to do with the firefighters' fire protection activities. The fire truck was responding to an unrelated fire, and Williams simply drove into its path from a cross street. The only relevant "nexus" in the case was between Williams's criminal activity and his death.
¶ 26. Similarly, in McElroy v. City of Brandon , 198 So.3d 373 (Miss. Ct. App. 2015), this Court held that an intoxicated driver's criminal activity[4] barred a wrongful death claim arising out of a crash with a police car. The crash resulted from the decedent's attempt to turn left in front of a police car on Highway 80 in Brandon. The police car was in the process of responding to an emergency call about a burglary at a nearby apartment complex. Id. at 375-76 (¶¶ 3-9). The circuit court granted summary judgment in favor of the city, and we affirmed on appeal. This Court specifically *930 held that "[b]ased on the [S]upreme [C]ourt's holding in [ Williams ], ... a causal nexus existed." Id. at 380 (¶ 26) ; see also id. at 375 (¶ 2) ("[T]his matter is controlled by the Mississippi Supreme Court's holding in [ Williams ]."). As in Williams , there was no nexus between the decedent's criminal activity (driving while intoxicated) and the police protection activity. The police officer was responding to a wholly unrelated burglary, and the decedent simply drove into his path from an exit ramp. Again, the only relevant nexus was between the decedent's criminal activity and his death. Based on the Supreme Court's decision in Williams and this Court's decision in McElroy , we hold that a claim is barred under section 11-46-9(1)(c) if there is a causal "nexus between the criminal activity of [the injured party] and the injury suffered by him ." Williams , 844 So.2d at 1165 (¶ 17) (emphasis added).
¶ 27. Even so, we conclude that the county was not entitled to summary judgment in this case. Rather, we conclude that the Supreme Court's decision in Durn , supra , controls the outcome. In Durn , the plaintiff was traveling south on Highway 49 when he passed a MHP state trooper traveling north. Soon after the two passed, the trooper observed a different vehicle speeding southbound, and the trooper made a U-turn to pursue the speeding vehicle. As the trooper approached the plaintiff's truck from behind, he attempted to pass the plaintiff in the northbound lane. But just as he did, the plaintiff made a left turn, and the trooper's car crashed into the plaintiff's truck. See Durn , 861 So.2d at 993-94 (¶¶ 2-6).
¶ 28. On appeal in Durn , the Supreme Court concluded that the plaintiff "committed a misdemeanor traffic offense by making a left turn when it was not reasonably safe to do so" and thereby committed "a criminal offense." Id. at 996-97 (¶¶ 19, 23). Nonetheless, the Court distinguished Williams , stating that it could not "equate making a left turn with operating a vehicle with a .20% blood alcohol content." Id. at 997 (¶ 23). The Court reasoned that the trooper was pursuing a different vehicle, that the plaintiff's improper left turn "was merely fortuitous," and that the claim was not barred. Id. at 998 (¶ 23). The Court held that "[i]t would defy common sense and natural justice for us to hold that [the] alleged improper left turn constituted criminal activity which entitled the Department [of Public Safety] to immunity." Id. at (¶ 24). In so holding, the Court emphasized that the trooper "was traveling at a high rate of speed" and failed to use his siren when he attempted to pass the plaintiff. Id.
¶ 29. We question whether an immunity that the Legislature has defined by statute should be granted or denied based on the judiciary's views of "natural justice." However, our role as an intermediate appellate court makes it unnecessary for us to make such a value judgment in this appeal. We simply hold that the county was not entitled to summary judgment because the evidence in the record-viewed in the light most favorable to Irwin-Giles and granting her all favorable inferences-so closely parallels the facts of Durn that our Supreme Court's decision in Durn is controlling. As the circuit judge concluded, there is no evidence in the record that Lynda could have avoided the crash had she not been speeding. Based on the evidence presented, all we can say is that the Irwins' Buick and Deputy Smith's truck tragically collided on Highway 6 because of the precise speed at which each vehicle was traveling. Like the improper left turn in Durn , we conclude that this is the sort of "merely fortuitous" happenstance that does not bar recovery under section 11-46-9(1)(c). Therefore, the county *931 is not entitled to summary judgment based on Lynda's speeding.[5]
CONCLUSION
¶ 30. We hold that there is a genuine issue of material fact as to whether Deputy Smith's conduct constituted reckless disregard for the safety and well-being of others. In addition, we conclude Irwin-Giles's claims are not barred by Lynda's speeding because Lynda's speeding cannot be imputed to William and because Lynda's speeding was a "merely fortuitous" circumstance under Durn . Accordingly, we reverse the order granting summary judgment in favor of the county, and we remand the case for further proceedings consistent with this opinion.
¶ 31. REVERSED AND REMANDED.
LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

The "black box" is the vehicle's airbag control module (ACM), which records data in the event of an airbag deployment and some non-deployment events. When an event occurs, the system "wakes up" in anticipation of the deployment of the airbags, and information is recorded from a few seconds prior to wake up.

Irwin-Giles does not dispute that Deputy Smith was "engaged in the performance or execution of duties or activities relating to police ... protection." See Reynolds v. Wilkinson Cty. , 936 So.2d 395, 397 (¶¶ 6-7) (Miss. Ct. App. 2006) (holding that an officer driving a county vehicle on a work-related errand was engaged in police protection activities because the statute "does not require that a law enforcement officer be then engaged in direct action to apprehend a criminal"); Jim Fraiser, Recent Developments in Mississippi Tort Claims Act Law Pertaining to Notice of Claim and Exemptions to Immunity Issues: Substantial/Strict Compliance, Discretionary Acts, Police Protection and Dangerous Conditions , 76 Miss. L.J. 973, 994 (2007) ("Suffice it to say, this prong of the reckless disregard test is not difficult to meet, and, ironically, is often met by the plaintiff's act of pleading that the defendant acted in the course and scope of his duty as a police officer.").

See, e.g. , Perry , 764 So.2d at 378-79 (¶ 25) ("[I]n order for the fact a victim is then engaged in criminal activity to bar recovery it must be shown that the criminal activity has some causal nexus to the wrongdoing of the tortfeasor. The statute is designed to protect law enforcement personnel from lawsuits arising out of the performance of their duties in law enforcement, with respect to the alleged victim.").

The driver's blood-alcohol content was .073%. The legal limit for minors is .02%. Miss. Code Ann. § 63-11-30(3) (Rev. 2014). The driver also had marijuana in his system at the time of the crash.

On appeal, Irwin-Giles concedes that it is possible that fault may be apportioned to Lynda even if the county is not completely immune from liability under section 11-46-9(1)(c). See Durn , 861 So.2d at 999 (¶¶ 30-33) (reversing and remanding for a determination of whether "comparative fault should be assigned to [the plaintiff], and, whether the award of damages should be reduced accordingly").